FANNIE CALLAWAY, Appellant, v. NEWMAN MERCANTILE COMPANY.— 12 S. W. (2d) 491.

Court en Banc, December 31, 1928.

*Frank H. Lee* and *R. A. Pearson* for appellant.

768

*Haywood Scott* and *Ray Bond* for respondent.

SEDDON, C.—Plaintiff sued defendant corporation to recover damages in the sum of $15,000 for personal injuries alleged to have been suffered by her in a fall upon a sidewalk in the city of Joplin, which defendant is charged with having negligently permitted to fall into a state of disrepair. At the conclusion of plaintiff's evidence, the trial court, at the request of defendant, gave to the jury a peremptory instruction to return a verdict for defendant, whereupon plaintiff took an involuntary nonsuit with leave to move to set the same aside, and judgment was entered in favor of defendant. After timely, but unsuccessful, procedural steps to set aside the involuntary nonsuit and the judgment thereon, plaintiff was allowed an appeal to this court from the judgment so entered.

The defendant was the lessee, tenant and occupant of a business building, situate on the southwest corner of Main and Sixth streets in the city of Joplin, where it conducted a large department store. The building in question was constructed and is owned by another corporation, the Newman Realty Company, which latter corporation rented or leased said building and premises to defendant under a month to month tenancy. The two corporations have different stockholders, but the majority of the capital stock of the Realty Company is owned and held by individual stockholders of the Mercantile Company, and *vice versa*. The building has a frontage of approximately one hundred feet on both Main and Sixth streets, and extends five stories above the level of said streets, with a basement below the level of the streets.

The evidence of plaintiff tends to show that the outside, or east, wall of the building in question is located about twelve feet, ten and three-fourths inches from the west curb-line of Main Street; that the sidewalk width on the west side of Main Street is ten feet and one inch; and that the east wall of the building is located thirty-three and three-fourths inches west from the west line of dedicated Main Street, or the east property line abutting said street. In other words, the distance between the east wall of the building and the west curb-line of Main Street is twelve feet and ten and three-fourths inches, and the east ten feet and one inch of said space lies within the street lines of dedicated Main Street, while the west thirty-three and three-fourths inches of said space is located within the property line of the Newman Realty Company. The erection of the said building was completed in October or November, 1910. The Main Street sidewalk on the east side of said building was constructed concurrently with the erection of the building, and by the building contractor, with a full width of twelve feet and ten and three-fourths inches, and extending one hundred feet, north and south, along the east, or Main Street, frontage of the building. Plaintiff claims to have been injured upon this sidewalk on November 20, 1923, or about thirteen years after the completion of said sidewalk. One of plaintiff's witnesses, the city engineer of Joplin, testified that "during all that time, the sidewalk has been used by the public as a sidewalk; no dividing line at this place thirty-three and three-fourths inches from the building; nothing visible to indicate there is a line to cross; the entire width, twelve feet and ten and three-fourths inches sidewalk, has all the time been open to and used by the public as a sidewalk." The uncontradicted testimony of other witnesses is to the same effect, so that it apparently stands conceded that the entire width of twelve feet and ten and three-fourths inches had been continuously used by the public as a sidewalk since its completion in 1910.

The evidence further shows that, in the contruction of the building, the basement was extended easterly and outwardly from the east main wall of the building and across the east property line, so as to extend some five or six feet over the west line of dedicated Main Street. In order to give light into the basement, beneath the sidewalk, the sidewalk was constructed according to a plan or system, known as the bar-lock lighting system, consisting of a steel frame, supported by pilasters, in which frame rows, or series, of glass prisms are set, at regular intervals, and grouted with cement to hold the prisms firmly in place. After such construction, the sidewalk presented a smooth, level surface. The first series, or row, of glass prisms were distant about four or five inches from the east main wall of the building, and the several succesive rows of prisms extended outwardly from the east main wall of the building about eight feet, or approximately three-fourths of the entire width of the sidewalk, the balance of which width consisted of solid concrete construction. The glass prisms were of a uniform size, each being about four inches square.

According to her testimony, plaintiff was walking south along the aforesaid sidewalk about 10:30 or eleven o'clock on the morning of November 20, 1923. She had paused to mail a letter in a street box near the curb, and had turned toward a display window in defendant's department store, and had taken three or four steps, when, according to her testimony, the heel of her shoe was caught in a hole in the sidewalk, occasioned by one of the glass prisms having been broken out of the frame of the sidewalk. She was carrying several parcels at the time, and the manner in which the heel of her shoe was caught caused her to lose her balance and to fall upon the sidewalk, thereby wrenching and straining her body. Plaintiff testified that her ''best estimation would be that hole was about two, or two and a half, feet from the show window; the mail box is just on the outside of the walk just south of the east entrance; I would judge I went about four and a half, five or six feet, somewhere in that neighborhood, before I fell.''

Witnesses on behalf of plaintiff testified that, at different times and on different occasions, they saw holes in the sidewalk where glass prisms had been broken from the sidewalk and had not been replaced. The composite testimony of such witnesses respecting the condition of the sidewalk may be stated as follows: ''Well, it was bad—cracked along there—the vibration of that walk would break the glass and crack them and fall down through; crack on the underneath side and keep dropping down so they have nothing but a shell on top, and about the time you would step on it, it would go through; well, there is glass out all along on the east side; they would repair it off and on when it would cave out and a hole came in;

they would drop another one in, in a day or two; some holes were in there for two weeks; there have been holes there for two weeks with boards laid over them; sometimes the boards were on them and sometimes off of them; there were holes along there all the time; don't remember any particular glass being out there in November, 1923; sometimes it was broken out and sometimes they have got it fixed, the glass; it was in bad condition; I have seen them out all around the building; I am not attempting to tell the jury I saw glass out there at any particular time; I have seen glass out pretty near every time I passed there; I didn't mean glass was left out there all around the building at one time; I meant I have seen glass out at different times in different places; I have noticed there was glass broken out all around there and men were out there working on it putting them in; I don't know whether there was any glass out where she fell; I have seen glass out all around the walk, at different times and different places have seen them out and men working on them; they just put in new glass was all I have seen when they become worn; I couldn't say as to any particular place; just at different places; I couldn't pick out the spots; don't know how soon they were put back; most all of the time some of those glasses would be broken out there; there were holes open for a year or two, I don't know just how long they were open, different glasses broken out there, at different times; don't mean to state just what glasses were out or what length of time they were out; don't know how quickly they repaired those glasses; I couldn't tell what day they were gone or anything like that; I have seen the same hole on two different days that I know of, see a hole today and probably the same hole tomorrow; there were holes from time to time, different holes.''

Only one witness undertook to testify respecting the condition of the sidewalk at the precise time and place of plaintiff's alleged fall. He testified: ''I didn't see her fall, but I saw her just as she got up; she was yet in a stooping position, and that is just about all I saw of it; I was in a hurry and I went on; I saw her just as she got up; I went down the sidewalk just an hour or two before. Q. What did you see as to the conditions there, of the condition of the glass in the walk, at that point? A. I will say there was several of them out; not only at that place but all the way along; I noticed them the next day after she fell; why, there were holes, that is what I mean; as well as I now recollect, she was somewhere probably a little south of the mail box, somewhere about the show window.'' On cross-examination, the witness testified: ''I didn't see her fall; all I know is that at different times I have seen holes in the sidewalk in different places, as I have described; where she was, it would be a little bit south and west of the mail box, I suppose five or six or

seven feet; she was right up at the show window when I saw her; it was south of the entrance at the show window; she was in a stooping position; I merely stopped when I saw her and heard somebody say what had happened and I went on; didn't stop to look at the place then; don't know if there was a hole there because I don't know where she fell; it was south of the entrance about five or six or seven feet west of the mail box, I suppose, somewhere in that neighborhood; I looked at that place the next day; I just happened to be passing along there and thought about it and noticed along there; there were three or four holes along there the next day; I mean right along there where I saw her standing; I don't know whether it was where she fell or not, and don't know whether those glasses were broken out that day or not; it was right where I saw her, right close along there; made no measurements there at any time; how far it was from the building, my best estimate from recollection and view of it is, it was all the way from twenty inches to three feet where she was at; I didn't make any actual measurements.''

Mr. Albert Newman, president of both the Newman Realty Company and the Newman Mercantile Company, was called as a witness by plaintiff, and testified that defendant, Newman Mercantile Company, employed porters who washed the display windows, and who examined and inspected the sidewalk every day, except Sunday (plaintiff testified that the accident occurred on Wednesday), and whenever they found a prism broken out, or in danger of cracking and falling out, they took the prism out and replaced it with another; that defendant kept a supply of glass prisms on hand for such purpose; that occasionally a prism was cracked, and occasionally one would be broken, but that defendant, Newman Mercantile Company, ''attempted to keep them in perfect repair.''

The evidence further tends to show that the sidewalk in question was originally constructed by the Newman Realty Company in accordance with the specifications of the city of Joplin, prepared by the engineering department of said city, and that, upon its completion in October or November, 1910, said sidewalk was viewed, accepted, and its construction approved, by the city of Joplin through the engineering department and the city engineer.

Appellant assigns error in the giving of defendant's peremptory instruction, which forced plaintiff to take an involuntary nonsuit and to suffer judgment to go against her, for the reason that the rules of the common law (so appellant claims) impose the positive duty upon the tenant or occupant of premises abutting upon a sidewalk to keep and maintain the same in a reasonably safe condition, where, as in the instant case, the sidewalk serves some private purpose, use or convenience to his own premises; that such duty devolves upon the tenant or occupant of the abutting premises, regard-

less of any corresponding or like duty on the part of the landlord or owner of such premises, and regardless of any governmental duty or actionable liability on the part of the municipality by reason of its failure to maintain the sidewalk, or to cause the same to be maintained, in a reasonably safe condition for use by the public; and, furthermore, that there is substantial evidence herein to show that plaintiff fell on that part of the sidewalk lying within the property line of the premises occupied by defendant, which part of the sidewalk area had never been dedicated by the owner, or condemned by the city of Joplin, for public use, and hence such part of the sidewalk area, within which plaintiff was injured, was not under the exclusive control or governmental supervision and jurisdiction of the municipality, but was under the immediate control and supervision of the land owner and its tenant, the defendant herein, whose duty it is to maintain the same, as private, and not public, property, in a reasonably safe condition so as not to cause injury to an invitee, or licensee, using the same.

Respondent, on the other hand, contends that the duty of maintaining, or causing to be maintained, a public sidewalk in a reasonably safe condition for the use of pedestrians rests wholly and exclusively upon the municipality, and not upon an abutting landowner, or the tenant and occupant of the abutting premises, where such landowner, tenant, or occupant of the abutting premises does not, by his affirmative act, create, or aid in creating, a dangerous and unlawful defect, opening, or obstruction in the sidewalk, amounting to a nuisance, and which causes the injury; and that no formality is necessary to constitute a common-law dedication of private property for public use as a sidewalk, and that the continuous and uninterrupted use of private property for public use as a sidewalk, with the owner's acquiescence and with the approval and acceptance of the municipality, makes the area so used a public sidewalk, and places the exclusive supervision and jurisdiction thereof in the municipality.

The general rule of actionable liability for failure to maintain a public sidewalk in repair is thus stated in 43 Corpus Juris, 1104, 1105: "In the absence of a statute expressly imposing liability, an abutting owner or occupant is not liable for injuries to a traveler through failure to maintain a sidewalk in repair, if he did not cause the necessity therefor, nor from defects therein which he did not create, and such liability will not as a general rule grow out of a statute or ordinance requiring abutting owners to construct or repair sidewalks and authorizing the municipality, upon the default of the owners, to construct and repair them at their expense; but the liability of an owner under such statutes or ordinance is to the municipality alone, to the extent of the fine or penalty prescribed there-

by. But the abutting owner will be liable where, by his affirmative act, he creates a dangerous condition, as where he uses the sidewalk for his own private benefit or convenience and fails to exercise reasonable care to prevent injury to persons lawfully using the way, or where he creates or maintains a nuisance. Where, however, his use of the sidewalk is proper and reasonable, and no negligence is shown, he will not be liable. . . . An abutting owner will not be liable for injuries from the defective condition of a sidewalk because of the fact that he had previously repaired a defect therein. . . .''

In the case of Breen v. Drug Co., 297 Mo. 176, wherein the substantive facts and circumstances were almost identical with those involved in the instant case, Division Two of this court unanimously ruled that there was no actionable liability on the part of the lessee of premises abutting upon the sidewalk whereon an injured plaintiff claimed to have fallen because of a small hole in the sidewalk, occasioned by the breaking and removal therefrom of a small glass inset or prism. In that case, this court said (l. c. 178, 184 et seq.) : ''She [plaintiff] alleges in her petition that, while walking along the above sidewalk, a cane, which she was compelled to use in walking, went into a small hole where the glass had been broken out of the sidewalk light in front of the building occupied by defendant. which caused her to fall and sustain the injuries complained of in the petition. It is alleged that the sidewalk light aforesaid was allowed and permitted to be put in said sidewalk for the use and benefit of the building occupied by defendant, and the tenants and lessees of said building; 'that the hole caused by glass in the frame work of said light which was broken out and into which plaintiff's cane went, had existed for some time prior to the time of plaintiff's fall, and so long that the defendant knew, or by the exercise of ordinary care could have known, of said defective condition of said sidewalk on account of the holes in the sidewalk light as aforesaid, and that said sidewalk, on account of the holes where the glass had been broken out of the frame work in said sidewalk light, was dangerous and was not reasonably safe for the use of pedestrians in passing along and using said sidewalk.' . . . The petition in this case alleges that defendant, as tenant and lessee, occupied the building at the southwest corner of St. Charles and Seventh streets in St. Louis, Missouri, and that it was guilty of negligence in permitting a small hole to remain in the sidewalk in front of said property, by reason of which plaintiff's cane, which it was necessary for her to use in walking, went into said hole, where glass had been broken out, and caused her to fall, and sustain the injuries complained of in the petition. It is not claimed that defendant, or any of its employees, produced said hole, or in any manner aided in producing the same.

On the contrary, plaintiff, in her petition, seeks to recover damages from respondent on the theory that it impliedly was under obligation to keep said walk in repair. Even if there had been an ordinance of the city of St. Louis in existence requiring the defendant to keep said walk in repair, it would not have afforded the plaintiff a right of action against defendant in view of the facts aforesaid. [Quoting Russell v. Sincoe Realty Co., 293 Mo. 428, 240 S. W. 147.] The defendant here was simply a tenant, and no claim is made that it produced the hole which caught plaintiff's cane and threw her down. The jury returned a verdict for defendant, and judgment was entered accordingly. In view of the ruling in the Russell case, supra, there can be no recovery on the facts disclosed in this record. Defendant's demurrer to the evidence should have been sustained.''

The doctrine and rule of law announced in the Breen case has been reaffirmed by Division Two of this court in Megson v. Griswold, 256 S. W. 496, wherein plaintiff fell through a defective covering in a public sidewalk, which was constructed and used for the purpose of affording light to the basement beneath such sidewalk, and wherein plaintiff sought recovery against the abutting landowner for his alleged negligent failure to keep said sidewalk in repair.

In Russell v. Realty Co., 293 Mo. 428, plaintiff sued to recover damages for personal injuries claimed to have resulted from the negligence of defendant, an abutting landowner, in failing to remove ice and snow from the sidewalk in front of defendant's premises, in violation of a pleaded city ordinance imposing the duty of removing snow and ice from any sidewalk in Kansas City upon all persons owning or occupying any real property fronting upon such sidewalk. Judge WHITE (then Commissioner), speaking for Division Two of this court, in affirming the action of the trial court in sustaining a demurrer to plaintiff's petition, concludes, after an exhaustive review of the judicial authorities: ''A city is under obligation to keep its streets and sidewalks in safe condition for travel, and if for any reason they become out of repair and are rendered dangerous by obstruction, defects, or accumulations of snow and ice, the city, where it has had notice of the condition, is liable to any person for injury caused by such condition. The appellant concedes the rule just mentioned frequently has been recognized and applied by this court, but earnestly insists that where the owner of adjacent property is affected by an ordinance, such as the one pleaded, he also is liable for injuries caused by his failure to obey such ordinance. . . . In every case cited where a defendant has been held liable to an individual injured by violation of an ordinance, the ordinance defines his duty with respect to some obligation which he already owed the public or the party injured. . . . No negligence is attributable to a person for allowing snow and ice to accumulate and remain upon a sidewalk.

The negligence is that of the city, and the city cannot saddle that obligation upon the property owner. . . . While the city may compel a citizen to remove snow and ice and make a sidewalk safe, he obeys the requirements as an instrument of the city, not as his primary duty. His failure to do it would be the failure of the city.''

In Ford v. Kansas City, 181 Mo. 137, 147, this court approvingly recognized and quoted the following statement of the rule in 2 Shearman and Redfield on Negligence (4 Ed.), Section 343: ''An abutting owner, as such, owes no duty to maintain the street or sidewalk in front of his premises; and is not responsible for any defects therein which are not caused by his own wrongful act.'' Whereupon, we therein announced the rule (l. c. 146): ''The keeping of sidewalks in reasonably safe repair for travel is not a police regulation; it is a governmental duty, resting upon the municipal corporation.''

In City of St. Louis v. Connecticut Mutual Life Insurance Co., 107 Mo. 92, 97, the plaintiff municipality sought to recover from defendant, an abutting landowner, a sum which the municipality had been compelled to pay to one Mrs. Norton, in satisfaction of a judgment obtained by Mrs. Norton against the municipality for personal injuries received by her from a fall in passing over a sidewalk in front of defendant's property. In denying plaintiff municipality a recovery against defendant property owner, this division of this court said: ''The damages recovered by Mrs. Norton were for a breach of the city's duty to keep its streets reasonably safe from defects resulting from the operation of natural causes. *To Mrs. Norton the defendant owed no such duty. The only duty it owed, in regard to the sidewalk, was to the city;* that duty was created by the city in its ordinances in which it prescribed for itself and its citizens the measure of damages for its neglect, in the penalty imposed for their violation. The damages the city was compelled to pay may have been the result of its failure to promptly and efficiently enforce its ordinances. But it was its duty to enforce them, and not that of the citizen; the duty of the citizen is to obey, and, if he fail to obey, to pay the penalty which the city imposes for such failure, and not the damages which the city may be compelled to pay for its neglect to perform its duty.'' (Italics ours.)

In Wright v. Hines (Mo. App.), 235 S. W. 831, 833, wherein plaintiff sued to recover damages for personal injuries claimed to have been suffered from a fall upon a sidewalk alleged to have been constructed and maintained by defendant property owner, Cox, P. J., speaking for the Springfield Court of Appeals, said: ''If Locust Street, where the accident occurred, was a public street, and the sidewalk a part thereof, and had been so accepted by the city, then defendant is not liable in this case, although it may have built and maintained the sidewalk on which the plaintiff fell and was injured. *A property*

*owner owes no duty to the public to repair and maintain in a safe condition a sidewalk abutting his property. His obligation is to the city, and the obligation to the public rests on the city, and not on the abutting property owner.* [Norton v. St. Louis, 97 Mo. 537; St. Louis v. Insurance Co., 107 Mo. 92; Baustian v. Young, 152 Mo. 317.] This doctrine is entirely distinguishable from the cases cited by appellant (plaintiff), to the effect that if a private individual throws water on a sidewalk and thereby causes ice to accumulate, or constructs a coal chute in the walk, or places a stairway thereon, or puts an obstruction of any kind on the walk for his own purposes, he may be personally liable for an injury resulting therefrom. Those persons are held liable because they are placing something on or in the walk that does not belong there, or is placed there for his own use, and is not a part of the walk as originally constructed. The principle on which they are held responsible has no application to a private individual who may fail in his duty to the city to repair a sidewalk abutting his property.'' (Italics ours.)

The several cases cited and relied upon by appellant herein (all of which we have read and carefully analyzed) fall within the category, or class, of cases mentioned in the Wright case, supra, wherein the abutting property owner, or his tenant, by his affirmative act, creates a dangerous condition in a street or sidewalk, amounting to a nuisance, by making an excavation or opening therein, or by placing some obstruction thereon or adjacent thereto, entirely foreign to its use as a sidewalk, such as a coal hole, a meter box, an open and unguarded areaway, a light well, a sidewalk grating, an open manhole, or cellar door, etc. In the instant case, there is no substantial evidence that there was anything inherently dangerous in the original construction of the sidewalk, or in the plan or system of its construction, which was done in accordance with the specifications prescribed by the engineering department of the city of Joplin, and which construction was viewed by the officers of the city after its completion, and was approved and accepted by the city, acting through its city engineer and engineering department. It is true that the particular system of construction was used to afford some private and personal convenience to the owner of the abutting premises, and its tenant, in furnishing a means of lighting the basement beneath the sidewalk, but such method or plan of construction does not differ from that frequently used and to be seen in all cities, especially in a business district. When the sidewalk was originally constructed and completed, it afforded a smooth, unbroken, level surface, entirely free from anything in the nature of an obstruction or opening, whereby a pedestrian might encounter any danger from tripping or falling. The mere fact that some of the glass prisms may have broken and fallen from the steel frame work of the sidewalk at different times following its construc-

tion does not, in our opinion, differentiate the instant case from one wherein planks or stringers may have been broken and loosened, or entirely removed, from a wooden sidewalk, or from one wherein bricks or flag-stones may have been broken and loosened, or removed, from a brick or flag-stone sidewalk; nor, in our opinion, does the system or plan of construction of the sidewalk herein call for the application of another and different rule or principle of law than that which is applied, by the weight of judicial authority, in the case of the disrepair of a wooden, brick or flag-stone sidewalk. There is no substantial evidence herein that defendant actively caused or produced the hole in which plaintiff claims to have caught the heel of her shoe. Regardless of the incidental and secondary use and convenience to the defendant herein, it is clearly evident that the sidewalk structure was intended and primarily constructed as and for a public sidewalk, and for no other purpose foreign to such use. Hence, under the general and well established rule, followed and announced by this court and by the Courts of Appeals in this State, and by the overwhelming majority of the appellate courts of other states, the duty to repair and maintain such public sidewalk in a reasonably safe condition for the use of pedestrians rests upon the municipality, the city of Joplin, and there is no duty or actionable liability on the part of defendant, which is the lessee of an abutting landowner, toward, or in favor of, plaintiff to maintain and keep such sidewalk in repair.

Appellant insists that the doctrine or rule of law announced by Division Two of this court in the Breen and Megson cases, supra, has been renounced by this court, en banc, in the case of Megson v. City of St. Louis, 264 S. W. 15. The latter case arose out of the same casualty involved in Megson v. Griswold, supra, 256 S. W. 496. Plaintiff fell through a defective covering in a public sidewalk in the city of St. Louis, which covering was composed of glass, cemented into an iron frame, which wholly and completely collapsed beneath his weight and precipitated him into the cellar beneath. The covering was used to light the cellar or areaway beneath the sidewalk. Plaintiff recovered a verdict and a judgment against the city of St. Louis, but the jury returned a verdict for the defendant Reichmann, who was a tenant and occupant of the abutting premises. The defendant city appealed from the judgment against it, and plaintiff appealed from the judgment in favor of defendant Reichmann. In an opinion rendered in Division Two, the judgment in favor of defendant Reichmann was affirmed, and the judgment against the defendant city of St. Louis was reversed outright upon the ground that plaintiff was deemed guilty of contributory negligence as a matter of law. The cause was thereafter transferred to Court en Banc upon a dissent to the majority opinion in division. The opinion of Court en Banc was written by WOODSON, C. J., who stated therein that "it is apparent that

the only real issue presented is that of contributory negligence on the part of the plaintiff. That was the sole issue upon which Division Two failed to agree, and that was the sole question on which the case was transferred to Court en Banc." The judgment *nisi* was affirmed in its entirety by Court en Banc, both as against the defendant city, and as against the plaintiff and in favor of defendant Reichmann. In concluding the opinion, however, Judge WOODSON remarked (l. c. 24) : "It may be conceded that Reichmann was also liable to the respondent for the damages sustained if he negligently permitted the cover of the areaway to become and remain in an unreasonably dangerous condition, yet that fact does not excuse the city for its failure to perform its non-delegable duty it owed to the respondent." It is apparent that the latter remark of Judge WOODSON was unnecessary to a determination of that case, and that it was in the nature of *obiter dictum*, although concurred in by a majority of the judges of Court en Banc. But, furthermore, in the cited case, the sidewalk covering wholly and completely collapsed, so that the nature and construction of the covering, in view of its complete collapse, might be said to bring that case within the class of cases above referred to, wherein the tenant of an abutting owner is held to be actionably liable for the negligent maintenance of a dangerous obstruction or opening in the sidewalk, entirely foreign to its use as a sidewalk, and amounting to a nuisance. No such circumstance or condition is shown to have existed in the case at bar. Here, the entire sidewalk structure, or any part of the frame work thereof, did not collapse, and the main structure itself remained intact and solid, except for an occasional small hole therein, due to the breaking out of some few of the glass prisms.

While we concede that the facts and circumstances involved in the case of Monsch v. Pellissier (Cal. Sup.), 204 Pac. 224, cited by appellant, are almost identical with those involved herein, and while that court seemingly ruled that the law casts upon the abutting property owner the duty of keeping in reasonably safe condition an iron grating, inlaid with glass, placed in a public sidewalk for the purpose of lighting a basement beneath the sidewalk and which was appurtenant to defendant's premises, yet we believe the cited case is out of harmony with the established rule of liability announced by this court in the cases herein cited, and is opposed to the weight of authority as announced by the appellate courts of most of our sister states. We think that the instant case must be ruled in accordance with the conclusions and principles of law announced by this court in the Breen case, supra, and other cited cases, which conclusions and principles of law we see no reason for departing from, and which decisions we see no sufficient reason for overruling herein.

There is some evidence herein, although very slight, that the hole in the sidewalk which plaintiff claims caused her to fall was located

within the thirty-three and three-fourths inches of space lying within the property line of the Newman Realty Company, defendant's lessor. But the evidence is conclusive and uncontroverted that the entire area between the east main wall of defendant's building and the west curb-line of Main Street had been continuously and uninterruptedly used by the public as a sidewalk for the entire period of thirteen years following its completion, with the acquiescence and permission of defendant and its lessor, and with the apparent consent, acquiescence and acceptance of the city of Joplin. The positive evidence is that there was no line of demarcation marked upon the sidewalk to show the location of the property line. Such facts, circumstances and user evidence a common-law dedication of that part of the sidewalk area which is located within the property line of the abutting landowner, and no formal dedication or condemnation thereof is necessary or required. [Heitz v. City of St. Louis, 110 Mo. 618, 625; O'Malley v. City of Lexington, 99 Mo. App. 695, 700; Drimmel v. Kansas City, 180 Mo. App. 339, 346; Meiners v. City of St. Louis, 130 Mo. 274, 284; Benton v. St. Louis, 217 Mo. 687, 703; Hanke v. City of St. Louis (Mo. Sup.), 272 S. W. 933, 936; Walker v. Railroad Co. (Mo. App.), 198 S. W. 441, 442; Stretch v. City of Lancaster (Mo. App.), 206 S. W. 388, 389.] We think that the primary duty of maintaining in reasonable repair the entire sidewalk area, including the thirty-three and three-fourths inch strip aforesaid, devolved and rested upon the municipality, the city of Joplin, and not upon the defendant occupant of the abutting premises, or its lessor, the Newman Realty Company, as respects the rights of the plaintiff pedestrian herein.

We are therefore of opinion that the trial court rightly gave the peremptory instruction, in the nature of a demurrer to the evidence, and that the judgment *nisi* should be affirmed. It is so ordered. *Lindsay, C.,* concurs; *Ellison, C.,* not sitting.

PER CURIAM:—This cause coming into Court en Banc from Division One, the foregoing divisional opinion of SEDDON, C., is adopted as the decision of the court. *Ragland, Atwood, Blair* and *Walker, JJ.,* concur; *White, C. J.,* dissents; *Gentry, J.,* dissents in a separate opinion, in which *Gantt, J.,* concurs.

GENTRY, J.—I regret that I cannot concur in the opinion of Commissioner SEDDON, wherein he holds that the trial court was justified in sustaining a demurrer to the plaintiff's evidence. It is alleged in the petition and established by her evidence that plaintiff caught the heel of her shoe in a hole in that part of the sidewalk on property under the control of the defendant; in other words, on the thirty-three and three-fourths inches of the walk next to the build-

ing, the same being occupied by the defendant. This portion of the sidewalk was over ground owned by defendant's lessor .and the basement underneath was at all times occupied by defendant; the steel frame with the glass prisms had been placed in the sidewalk for the benefit of defendant, defendant inspected the same every day except Sunday, and repaired the same whenever repairs were needed. This did not constitute an abandonment by the defendant, nor an acceptance thereof by the city. Hence, I am of the opinion that the question was a proper one to submit to the jury, and that the action of the trial court in taking the case from the jury constituted error. The case cited by Commissioner SEDDON of Breen v. Johnson Brothers Drug Co., 297 Mo. 176, is not an authority in support of his contention; for the plaintiff in that case sued the owner of a building for injuries received on a defective sidewalk in front of said building, which walk was entirely in the street. Very properly the Supreme Court held in that case that the city was liable for the defective sidewalk and not the owner or occupant of the building. [Breen v. Johnson Brothers Drug Co., 297 Mo. 1. c. 184.]

In the instant case, the injury to plaintiff, according to her evidence, was received while she was on a part of the sidewalk over the ground occupied by the defendant, and the evidence fails to show that said piece of ground had been dedicated to the city for public use, and it also fails to show that the city ever exercised ownership or control over it. Hence, the question was one of fact for the jury.

Being of the opinion that the case should be reversed and remanded, I dissent from the majority opinion herein. *Gantt, J.,* concurs.