MARY E. MORGAN, Plaintiff-Respondent, v. KROGER GROCERY & BAKING COMPANY, Defendant-Appellant.—154 S. W. (2d) 44.

Court en Banc, August 22, 1941.

Rehearing Denied, September 25, 1941.

*Wayne Ely* for appellant.

*Gus O. Nations* for respondent.

544

ELLISON, J.—The plaintiff-respondent recovered a judgment against the defendant-appellant, Kroger Grocery & Baking Company, for $10,000 damages for personal injuries sustained in falling on an icy sidewalk when approaching the latter's store in a building at 4066 Shenandoah Avenue in St. Louis on February 3, 1936. Nine of the jury concurred in the verdict. The city and Wm. J. and Alice S. Meisburger, husband and wife and owners and lessors of the building, also were joined as defendants, but the plaintiff dismissed as to the city and the jury found for the defendant Meisburgers. The assignments on this appeal complain: that the trial court erred in refusing to give a peremptory instruction for appellant; of the giving and refusal of instructions; and of the remarks and argument of plaintiff's counsel, and rulings thereon.

The case was first argued and submitted in Division I of this court and an opinion written dismissing the appeal because appellant's abstract and brief were held defective. On a dissent of one of the judges the cause was transferred to the court en banc. Appellant has filed a new abstract and brief here. Respondent asks [46] us to disregard them and adhere to the divisional opinion. But the law is otherwise. The case stands here as if it had not been previously heard and submitted. [Morris v. K. C. Lt. & Power Co., 302 Mo. 475, 481, 258 S. W. 431; Sutton v. Anderson, 326 Mo. 304, 318, 31 S. W. (2d) 1026, 1030.]

The building had a fifty-foot double front with two storerooms. One, on the corner of Shenandoah and Thurman Avenues, was occupied by a drug store, and the other by the Kroger Company. To the left of the latter storeroom (as you face it) was a door and stairway leading to the second floor, which was rented for living apartments. Still to the left of the Meisburger building was a narrow passageway between it and the next building, with three steps leading up from the public sidewalk to the passageway, which latter was on the adjoining

lot. But a restrictive covenant in a deed executed some forty-six years before in June, 1890, forbade the erection of any building on the Meisburger lot closer than ten feet to the street line, in consequence of which the Meisburger building was set back from the property line a little over ten feet.

For twenty years, to the knowledge of Mr. Meisburger and a witness who had conducted the drug store for that length of time, the ten-foot space just mentioned had been occupied by a concrete sidewalk which physically constituted an integral part of the regular sidewalk that continued on past the adjoining lot. Sometime during that twenty-year period the regular sidewalk had been extended out to the street curbing, across a three-foot parkway or dirt strip, so that the whole afforded continuous lateral and longitudinal passage to the public from the curb to both stores, to the apartment entrance, and on up to the corner. These physical details are shown by two photographs, Exhibits C and D, introduced by *plaintiff* and exhibited to the witnesses who testified on such matters. They are incorporated in this opinion. The point marked X on Exhibit C is where respondent testified she fell. According to her testimony it was two or three feet from the store entrance. The point marked 0 is where witnesses for appellant said she fell. But we must rule the case on the evidence more favorable to respondent. Two other photographs also were introduced by respondent, but it is unnecessary to insert them. Exhibits C and D fairly show the situation. They are as follows.

EXHIBIT C.

PLAINTIFF'S EXHIBIT C.

546

EXHIBIT D.

PLAINTIFF'S EXHIBIT D.

 Respondent's legal contention is that appellant was bound to maintain the space where she fell in condition for safe passage into the store because: (1) it was a part of the leased premises, or appurtenant thereto; (2) it had never been dedicated to street use and accepted by the city, so far as the record shows; (3) it was so close to the door of the store as to be a part of the entrance thereto; (4) appellant's store manager saw her approaching from the time she got off the street car—as he, himself, testified—and yet failed to warn her of the danger, or to assist her. We need only say respondent is not entitled to rely on this last assignment of negligence because it

was not pleaded. The concluding paragraph of her third amended petition, on which the case was tried, expressly charges that all of her injuries were "directly due to the joint negligence of the defendants in permitting said slick and uneven ice and snow to be and remain upon said passage way and in failing to remove the same," when they knew or should have known of said unsafe condition in time to remedy it. There is no charge anywhere in the petition of failure to warn or assist her.

■ Getting back to the other points, respondent's supplemental brief en banc explicitly concedes that an abutting landowner has no duty to keep a city-owned sidewalk clear of ice unless he contributed to the hazard. So on respondent's own theory the case hinges on whether the place where she fell was not a public sidewalk, but a part of the leased premises, or appurtenant thereto. The lease was made in 1925 to the Missouri-Illinois Stores Company, cancelling a previous lease to the Piggly-Wiggly Stores, Inc., dated in November, 1922. It was assigned to appellant as lessee in September, 1928, nearly eight years before the casualty. It was a long "Standard Store Lease," nearly all printed. The printed part thereof does recite the leasing of "the premises with all appurtenances thereto situated in the City of St. Louis, State of Missouri." From there on, by the use of a small part of the printed matter, interlineations and typewriting, the lease reads: "known as No. 4066 Shenandoah Ave. to include the store room on the first floor, size 19x60 feet ceiling, 12 feet high and wareroom 12x20 in rear thereof—first floor, of the two story brick building, known and described as." Then filled in in typewriting, it continues: "Part of Lot 14 in City Block 4923 fronting 25 feet on the South line of Shenandoah Avenue by a depth southwardly of 83 feet more or less to a line 40 feet north of alley more or less to edge of building facing Thurman Ave. and known as #4066 Shenandoah Ave. Rear entrance to said store room and warehouse from alley in the rear of said store building."

: It will be noted the description covers (italics hereafter ours) "the premises with all appurtenances thereto . . . to *include* the store room." Further, it designates the property as "part of Lot 14." It was that, being one-half of the fifty-foot lot, lengthwise. Also it says, "by a depth southwardly of 83 feet more or less to a line 40 feet north of alley more or less." This would appear to be the *front* eighty-three feet of the leased half of the lot, and checks with the deed whereby the lot was conveyed to the Meisburgers, the description there reciting the lot was fifty feet wide and 123 feet four and 5/8 inches long from Shenandoah Avenue to the alley. If that is so, the lease at least formally covered the ten-foot strip between the property line and the front of the building.

. However, the sixty-foot inside length of the storeroom plus the twenty-foot wareroom would use eighty feet of the eighty-three-foot

designated length, exclusive of the ten-foot sidewalk. And through-out the lease the word "premises" is used as referring to the build-ing rather than the ground. It provides the "premises" shall not be "overloaded or damaged;" covenants that the "interior" of the "premises" shall be kept in good order; and agrees that "in order for such premises to be adapted for occupancy and use by the lessee, they must be made of certain standard arrangement, including style of *front*; color of paint, both inside and out; style of interior deco-ration; provided with both *front* and rear entrances with specified closures therefor." Paragraph 7 of the lease provides, "the lessors or their representatives may *enter* said premises at any reasonable hour to protect the same against the elements or accidents." And paragraph 7 (e) stipulated: "The said lessor shall be responsible for and keep the *exterior and interior* of said premises, including the roof, foundations, sky lights, downspouts, gutters, plate glass, floors, ceiling, walls and also *sidewalks in front thereof* . . . in good condition and repair."

In fact, it is a typical chain store lease, a form for general use, providing for a distinctive architectural and color scheme, contem-plating the front of the building as the front of the premises, and multiplying stipulations about the building, which would ordinarily be the leased premises. Again, the lease contains a covenant on the part of the lessors for "the peaceful use and possession of the prem-ises" during the term of the lease, which obviously cannot refer to the ten-foot sidewalk in front of the store; whereas a rear entrance to the storeroom and wareroom from the alley in the rear was *reserved*, that part being in typewriting.

If we were called upon to construe the lease, our conclusion would be that the intention was to demise the storeroom and wareroom and the ground upon which they stood, together with an easement for a passageway from the alley to the back door. It may well be that the parties overlooked the fact that the restricted ten-foot strip in front of the store building was a part of the lot. But we think it unnecessary to base our decision ■ wholly on that issue because, whether the ten-foot strip was included in the lease or not, the evi-dence clearly shows it had been dedicated to public use as a part of the street, and accepted by public user. The whole sidewalk had been in the condition and position shown by the two photographs for twenty years. Respondent concedes Mr. Meisburger and the drug store pro-prietor testified to that.

But her brief argues they did not say the ten-foot strip had been generally used by the public. That is true. Nevertheless, on the question of user by the public the original, first and second amended petitions filed by respondent were introduced in evidence. In all of them, it was alleged that the City of St. Louis was the owner of the whole sidewalk where she fell. The original petition pleaded that it

was "used, as a foot passage by persons using said sidewalk;" and the first and second amended petitions charged that it "was open for the public use of pedestrians." The third amended petition alleged the city was the owner of the regular sidewalk in front of the store, and that the ten-foot strip of sidewalk on the Meisburger lot "constituted the entrance and the sole means of ingress and egress to the said building, and which, as defendants well knew, was used by tenants living on the second floor of said building and by the general public in entering and leaving said store and second floor living quarters, and that said strip of granitoid was immediately contiguous to; and on the same level with, said public sidewalk owned by the city, and was at times herein mentioned constantly used as a passageway for pedestrians, and particularly those entering and leaving said building."

In addition to that the two photographs undeniably show the whole space from curb to store front was physically all one sidewalk without any obstruction or line of demarcation between the ten-foot strip next to the building and the part outside. It is idle to say any part of it was reserved for private use, or that all of it was not used by the public with the acquiescence of the appellant lessee and the owners of the building. Respondent seems to entertain the theory that it may have been the duty of both the city and the appellant to keep the sidewalk free of ice in front of the door of the store. She says in her brief: "But even if the city had owned the strip of walk, and had a duty to keep it clean, that would not relieve the defendant storekeeper of the duty to keep its entrance safe for passage. The controlling factor is not whether the place is a city-owned walk, but whether it is a part of the entrance to the store."

We do not understand that to be the law. But first, as to the question of common law dedication and acceptance by the city. In a leading case, Benton v. St. Louis, 217 Mo. 687, 701, 118 S. W. 418, 422, 129 Am. St. Rep. 561, these questions were exhaustively discussed. There a wooden sidewalk was old, narrow, slanting, "wobbly" and "rickety," with a yawning pit full of water extending up to it. There was no evidence that the sidewalk had been built or had ever been repaired by the city. No curb or sewer line had ever been established. Yet a fifty-foot strip of land had been fenced on each side for fifteen or twenty years, which included thirty feet of platted private land but detoured ten feet off the original platted road. In the center of the fifty-foot fenced strip was a roadway for vehicles— all that the city recognized as a public street. Yet it was held the old sidewalk in the strip was a part of the highway.

As to the dedication, the case ruled an *animus dedicandi* was shown by the permanent fences maintained on each side, in line with fences further on. Next, the practical abandonment of the fifty-foot strip for private use, and the entire absence of the usual earmarks of such use, were deemed to enforce that conclusion. In the instant case

there are no fences, but the curb line and concrete sidewalk extending integrally clear to the building are more persuasive, particularly since we know the ten-foot strip next to the property had been permanently withdrawn from building uses by a restrictive covenant in a former deed. In addition to that is the testimonial and obvious fact that the whole sidewalk had been open to public use for twenty years, and necessarily must have been so used in an urban, retail section such as the evidence shows this to have been.

As to the acceptance, the Benton case further rules the former uncertainty as to whether mere user by the public will amount to an implied acceptance "is removed by the later authorities, and it may now be considered as the prevailing opinion that an acceptance may be implied from a general and long-continued use by the public as of right." The case goes on to say that the inhabitants of a municipal corporation "stand to the officers as principals, and if the principals have, by their conduct, accepted the dedication, it is of no great importance that the agents have taken no action in the matter." On the question of acceptance see, also, Curran v. St. Joseph, 264 Mo. 656, 659, 175 S. W. 584.

Another case strongly bearing on the facts here is Callaway v. Newman Mercantile Co., 321 Mo. 766, 781, 12 S. W. (2d) 491, 497, decided by the court en banc. There the mercantile building of the defendant lessee lacked about thirty-four inches of extending to the street line, but a wide abutting public sidewalk overlapped that space. Under the sidewalk the lessee's basement extended out into the street under the sidewalk beyond the street line. To light the basement a steel frame set with glass prisms was laid in the sidewalk next to the building. One of these prisms became dislodged, and the plaintiff, a female pedestrian, caught the heel of her shoe in the resulting hole, which was about two feet from the store window, and inside the thirty-four-inch space of private land. The lessee ordinarily repaired such conditions when discovered and kept a supply of prisms for that purpose. Upon its completion the sidewalk had been approved by the engineering department of the City of Joplin.

The opinion ruled the lessee was not liable, saying the whole sidewalk clear up to the building, including the part on private ground had been used by the public for thirteen years with the acquiescence of the city, the landowner and the lessee; and that there was no line of demarcation on the sidewalk showing the location of the property line. Concluding the decision declared: "Such facts, circumstances and user evidence a common-law dedication of that part of the sidewalk area which is located within the property line of the abutting landowner." This ruling was based on facts much weaker than those here. There is no evidence in the instant case that the strip of sidewalk where respondent fell was maintained by the owner or lessee of the building, or that it served any private purpose

other than to cover what would otherwise have been bare ground and to furnish a passageway to the store. The photographs do show what appear to be two horizontal iron doors in a frame set in the sidewalk, but there is no evidence as to what was underneath them. The lease does not mention any basement.

Respondent argues the part of the sidewalk two or three feet from the store door, where she fell, furnished an *entrance* thereto which appellant was required to keep in safe condition. But every public sidewalk built up flush with a building and entrance door does that. As was well said in Sheridan v. City of St. Joseph, 232 Mo. App. 615, 628, 110 S. W. (2d) 371, 378, "After the sidewalk had been constructed and the dedication of the strip had become complete, it became immaterial that it was used by the public, among other things, to facilitate an entrance into the appellants' building or that it served the appellants' building by affording more ready access thereto by the public. The service thus rendered the appellants' building was not in the nature of a private benefit to the owners of the building." In that case the defect complained of was an abrupt six-inch step-off about four feet from the front entrance door of the building.

A final contention made by respondent is that the sidewalk was dangerous because it sloped downward to the left, or east, and also outwardly toward the street curb, as shown by the photographs; and she gives the fall in inches for designated distances, as gleaned from the *photographs*! Respondent's theory is that the alleged slope made the slick ice especially dangerous to pedestrians; that since this was the only means of entrance to the store, appellant owed a duty to its invitees to make the passageway safe, whether the danger be considered due to faulty original construction before the lease was entered into, or to improper maintenance in the failure to remove or roughen the slick, icy surface; and that a failure to remedy the condition, after knowledge thereof, contributed to the hazard produced by nature.

Tentatively we will concede a tenant in complete control of premises owes a duty to *invitees*, as much as the landlord and sometimes more, to keep the same reasonably safe, whether the defect be due to faulty original construction or to maintenance. [Lambert v. Jones, 339 Mo. 677, 682(1), 98 S. W. (2d) 752, 755(1).] We will also concede the *city* might be liable for special dangers produced by the aggravation of a general, natural spread of ice or snow on its public sidewalks, Walsh v. City of St. Louis (Div. 1), 346 Mo. 571, 142 S. W. (2d) 465; and that where the abutting ▇ owner or tenant contributes to the hazard, he also may be liable, Stith v. Newberry Co., 336 Mo. 467, 481, 79 S. W. (2d) 447, 453. But even then we are unable to uphold respondent's contentions.

▇ First, the photographs are not proof in themselves of distances or of dimensions or measurements of the depicted objects, and could not be made properly available to establish the relative propor-

tions of those objects—certainly not without the aid of expert testimony, and perhaps other proof unless the condition be obvious.* They were introduced without objection, but were offered only to show the general surroundings and "the physical situation with reference to the sidewalk and the buildings." There was no hint that they would be relied on to show the slope of the sidewalk in inches over given horizontal distances. Indeed there was no charge in the petition of a dangerous slope and no reference to such a condition in the evidence, so far as we have been able to find. The question really arose on an instruction and during the closing argument of respondent's counsel.

But at one place in her brief her counsel says the ten-foot strip of sidewalk "sloped slightly to the east and north, making it somewhat uneven." And at another place the brief says: "Exhibit D shows a fall of about seven inches to the east in fifty feet. Exhibit C shows, by comparison with the steps at the left, a fall off to the north of about seven inches in ten feet (from the store wall to the north edge of the ten foot strip)." From this it is apparent the alleged gradient is a matter of guess work by comparison with depicted objects. The photographs were not offered for that purpose and by themselves were not competent evidence thereof, as above stated. But even the figures assumed would not make out a case of dangerous construction, under the decisions of this court. [Mullen v. Sensenbrenner Merc-Co. (Mo. Div. 1), 260 S. W. 982, 984 (slope 5 inches in 5 feet); Paubel v. Hitz, 339 Mo. 274, 276, 96 S. W. (2d) 369 (9½ inches in 58 inches).]

Again, the appellant was not in complete control of the sidewalk, which served not only its store but also the drug store and the apartments upstairs. Further, as already held, the sidewalk was not a part of the leased premises because it had been dedicated to public use and accepted by the public. And finally, mere nonfeasance in failing to remove a natural precipitation of ice and snow from the public sidewalk was not a *contribution* to the hazard, so far as the abutting tenant was concerned.

The respondent was a woman seventy years old, and in the fall on the sidewalk broke her hip. The circumstances are regrettable, but the law does not allow a recovery against appellant on the facts in this record. In view of the result reached we need not discuss the other assignments of error. The judgment is reversed. All concur.

ON MOTION FOR REHEARING.

PER CURIAM:—Respondent's motion for rehearing complains our holding that she failed to make a case for the jury is based

---

*20 Am. Jur., secs. 727, 734, pp. 608, 613; 22 C. J., sec. 1124, p. 921; U. S. Shipping Board v. The St. Albans, 77 A. L. R. 938, 946, note; Ligon v. Allen, 157 Ky. 101, 162 S. W. 536, 538, 51 L. R. A. (N. S.) 842, 851, note.

solely on appellant's evidence, and violates the rule that on a demurrer to the evidence, the facts must be viewed in the light most favorable to the plaintiff, and the defendant's evidence to the contrary cannot be considered. She asserts the opinion is bottomed solely on: (1) the testimony of the defendant Meisburger (owner of the store, who was acquitted by the jury) and appellant's witness Bechtold, both of whom testified to the general use of the sidewalk for twenty years; (2) appellant's Exhibit 3, the store lease; (3) respondent's original, first and second amended petitions, which were abandoned by respondent, the case being tried on a third amended petition. Appellant introduced said abandoned pleadings in evidence.

█ Respondent is right in saying we must view the evidence in the light most favorable to her in passing on a demurrer to the evidence. But this does not apply to documentary evidence which is introduced without objection and is undisputed. [Wendorff v. Mo. State Life Ins. Co., 318 Mo. 363, 369(1), 1 S. W. (2d) 99, 101(2).] The abandoned pleadings were competent evidence as *admissions* of respondent. [Wahl v. Cunningham, 332 Mo. 21, 39(13), 56 S. W. (2d) 1052, 1059(14).]

As to the lease, the parties orally agreed at the beginning of the trial that the store lease from the Meisburgers was dated in 1925, assigned to appellant in 1928, and expired in 1937. The casualty occurred in January, 1936. The written lease was offered in evidence by appellant without objection, formal identification thereof being waived by respondent's counsel. When counsel for appellant started to read paragraph 7(e) of the lease to the jury, counsel for defendants Meisburger objected to the reading of "that portion of the lease" and the objection was sustained. Then counsel for respondent said: "We want to now offer that same exhibit that he has just offered, or that portion of it, on behalf of the plaintiff." Counsel for defendants Meisburger objected and that objection was sustained. But, as we understand, only that portion of the lease was excluded. In the principal opinion four lines refer to and quote part of said paragraph 7(e). That part is stricken from the opinion. But the excision of it can work no change in the result. It clearly appears from the lease as a whole, omitting the part just stated, that in contemplation of the parties the lease was on the building, not the ten-foot sidewalk which had been thrown open to the public. And even though the Meisburgers owned and appellant leased the ten-foot strip subject to the sidewalk easement, it would make no difference in the result. [Callaway v. Newman Mercantile Co., supra, 321 Mo. 766, 12 S. W. (2d) 491.]

Respondent's own photographic exhibits C and D show there must have been general use of the whole sidewalk space from the front door of the store out to the curb. There is not the slightest contention that this had not been going on for many years, and nothing to indi-

cate otherwise. There is nothing in the record to dispute it. Respondent herself testified she had been shopping at the store for quite a while; not a number of years, but several months, anyway. The following questions and answers appear:

"Q. And everybody used this same part of the sidewalk where you fell, didn't they? A. Everybody used that opening, the door on the sidewalk, yes.

"Q. I mean when they walked along the front there. That is all one sidewalk as far as looks is concerned? A. I think so.

"Q. All the same from the store out to the curb? A. Yes."

Respondent further contends we have ruled the case on a point not raised in the trial court—that the question of dedication of the ten-foot strip by public user was not an issue below. If we are in error in that we have been led into it by respondent. She says in her supplemental brief en banc: "There is nothing in the record to show either a dedication of the plot to the city or an acceptance by the city," citing Benton v. City of St. Louis, 217 Mo. 687, 118 S. W. 418, which she says is "relied on by appellant." And appellant does cite the case under Point I of its brief, saying "the sidewalk on which appellant fell was a public sidewalk." We ruled the point on the decision cited by both parties. The final contention is that by reversing the cause without remanding we have denied her the right of trial by jury. This hardly calls for discussion. If there were questions of fact for the jury that would be true. But it is a judicial function to determine whether the evidence is substantial, and if it is not there is nothing for the jury to decide. [Cowell v. Employers' Indemnity Co., 326 Mo. 1103, 1116(III), 34 S. W. (2d) 705, 710(9).]

For these reasons the motion for rehearing is overruled.