Edward LAMMERT, Plaintiff/Appellant,

v.

LESCO AUTO SALES, et al.,
Defendants/Respondents.

No. 69699.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 24, 1996.

Martin & Malec, James M. Martin, Heidi L. Leopold, St. Louis, for plaintiff/appellant.

Burns & Marshall, LLP, Mark G. Burns, Clayton, for defendants/respondents.

PUDLOWSKI, Judge.

Edward Lammert (appellant), appeals the trial court's grant of summary judgment to the respondents, Lesco Auto Sales (Lesco), Ernie Lester (Lester), and Daniel Lester (Daniel). Appellant sued respondents for injuries sustained while he was repairing a garage door on their property. We find that no exceptions to the general rule that land-

lords are not liable for the injuries to their tenant's invitees apply to the undisputed facts presented in this case. Summary judgment in favor of Lester was properly granted. We find further that respondents did not exert the "substantial" control over the work of the independent contractor necessary for them to be liable for his injuries. We also find that the repair of the garage door was not an inherently dangerous activity and said doctrine is, therefore, not available to appellant as an exception to the general rule that landowners are not liable for the torts of independent contractors. We find also that respondents did not negligently fail to warn appellant of the dangerous condition because, by hiring him to repair the condition, they effectively warned him of it. Finally, we find no merit to appellant's claim that respondents failed to provide proper tools and a safe work place as appellant was injured by his own method of repair and use of the tools. We affirm the judgment of the trial court. We find that there are no genuine issues of material fact and respondents are entitled to judgment as a matter of law.

Appellant sued respondents for injuries sustained while he was repairing respondents' garage door at 1605 Florissant Road on November 5, 1993. Lester owned the property and leased it to his son, Daniel, who does business there under the fictitious name of Lesco Auto Sales, a used car sales business. Lesco maintained the lot, the garage buildings and the garage doors on November 5, 1993. On that date, and at times prior to that date, Lester called appellant's brother Donald Lammert (Donald) and asked him to repair the garage door. Donald declined to do so because he thought the job was too dangerous for him and that it required someone with more expertise in the area. Respondents then called appellant who agreed to repair the garage door. Appellant had done odd jobs for the respondents in the past and had been paid for his work. Appellant had repaired between fifty and sixty doors in the past. In one of these repairs before the accident, appellant had replaced a spring that was wound around a bracket at the top of the

door, similar to the one involved in this case. Appellant stated that, before the injury, he knew that if the brackets were under tension and if the bolt securing them came loose, the bracket would spin. Appellant admitted that he was the one making decisions as to method of repair, in that "it needed a bolt and a cable." Lester provided appellant with a wrench and a ladder, at appellant's request. Appellant stated further that, between he and Lester, appellant had more knowledge and experience as to garage door repair. Appellant attempted to repair respondents' garage door on November 5, 1993. Lester helped appellant by holding the ladder and was not directing him or telling him what to do. Appellant was making the decisions as to what was to be done to repair the garage door. Daniel was in the office while appellant attempted to repair the door and was not involved in any way.

In order to determine whether the bracket was loose, appellant used a hammer to tug on the bracket, and it did not appear to be loose. While tightening the bracket on the door, it came loose and spun around, injuring appellant's hand. Appellant admits there was a safer way to repair the door and the method used at the time of the accident was different from the way he had done the same job in the past. He admits that he could have used a safer method and used different tools to make the job safer.

Summary judgment is an extreme remedy and may only be employed where there are no genuine issues of fact and where the moving party is entitled to judgment as a matter of law. *Elliott v. Harris*, 423 S.W.2d 831, 835 (Mo. banc 1968). Review of an order granting summary judgment is essentially *de novo*. *ITT Commercial Finance Corp., v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). When reviewing the record, we will not only review it in the light most favorable to the non-moving party, but we will grant the non-movant all reasonable inferences, not deferring to the trial court's order. *Id.* Since the respondents were the moving party in this case, they will be entitled to summary judg-

ment if they show any one of the following three items: "1) facts that negate *any one* of the claimant's elements facts, 2) that the non-movant, after an adequate period of discovery, has not been able to produce evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or 3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly pleaded affirmative defense." *ITT,* 854 S.W.2d at 381.

■ In his first point on appeal, appellant asserts that he pled a viable claim for negligent failure to maintain premises, holding respondents liable for dangerous conditions on their land, and that there were genuine issues of material fact in dispute regarding this issue. Appellant, as an independent contractor with respondents' permission to use his premises, is an invitee. *Matteuzzi v. Columbus Partnership, L.P.,* 866 S.W.2d 128, 132 (Mo. banc 1993). Accordingly, we must analyze respondents' potential for liability in terms of appellant's status as an invitee and also as an independent contractor. We must also analyze appellant's claims against Lester, the lessor landlord, and Daniel, the lessee tenant, separately as well. Since Lesco is merely a fictitious name for Daniel and not a separate legal entity, we will hereafter refer only to Daniel.

■ Generally, a lessor is not liable to business invitees of a tenant for personal injuries received while on leased premises. J.M. v. Shell Oil Co., 922 S.W.2d 759 (Mo. banc 1996); *Uelk v. Directory Distributing Assoc.,* 803 S.W.2d 632, 635 (Mo.App.1991). This general rule does not apply in several situations: 1) where the landlord had superior knowledge of a dangerous condition not discoverable by his tenant and he fails to warn of said condition; 2) where the injury occurs in an area over which the landlord retains actual control; 3) where the landlord is responsible for premises maintenance and repair or 4) where the landlord leases for a "public use" premises that are in a dangerous condition. *Id.* at 635–636. *Milne v. Pevely*

*Dairy Co.,* 641 S.W.2d 158, 160–161 (Mo.App. 1982). Appellant has not alleged any facts to support any of the above exceptions or any other exception. Appellant admitted that he knew that the brackets were under tension and that if a securing bolt came loose, the bracket would spin. He stated further that he had more knowledge than Lester in repairing garage doors. Therefore, respondents did not have superior knowledge of the dangerous condition because appellant admitted to his knowledge of it. There is no disputed fact on this issue. No evidence was presented which suggested that Lester retained control over any portion of the premises or the activities of Daniel, the lessee. Accordingly, the respondeat superior doctrine is not available as a theory of liability for the appellant to recover from Lester. *See Shell,* 922 S.W.2d at 764. Appellant has presented no facts to suggest that Lester was in charge of maintenance and repairs. Lastly, a service station and used car lot is not a "public use" as it is not a place contemplating the assembly of a large number of persons. *Shell,* 922 S.W.2d at 763; *Roth v. Zukowski,* 757 S.W.2d 581, 583–84 (Mo. banc 1988); *Dunlap v. Howard,* 629 S.W.2d 664 (Mo.App.1982). Lester, therefore, as a landlord, is not liable for the injury to appellant. Summary judgment, therefore, was properly granted in favor of respondent Lester. As a result, appellant may recover, if at all, only from Daniel, the lessee of the premises.

■ A lessee or tenant in complete control of premises owes a duty to invitees as much as the landlord or landowner to keep the premises reasonably safe. *Morgan v. Kroger Grocery & Baking Co.,* 154 S.W.2d 44, 348 Mo. 542 (Mo.1941). In terms of liability, the lessee steps in the shoes of the lessor, or landowner. Accordingly, the lessee of the premises owes an invitee the obligation to use reasonable and ordinary care to prevent injury to the invitee. *Behnke v. City of Moberly,* 243 S.W.2d 549, 554[8, 9] (Mo.App. 1951); *Hunt v. Jefferson Arms Apartment Co.,* 679 S.W.2d 875 (Mo.App.1984). The liability of the landowner, or lessee in this instance, for injuries received on the premis-

es, however, is dependent upon the device which caused the injury being in the possession and control of the lessee. *Hunt*, 679 S.W.2d at 880. If the landowner, or lessee, relinquishes possession and control of the premises to an independent contractor, the duty of care shifts from the lessee or landowner to the independent contractor. The landowner, or lessee, is then relieved of potential liability as he is no longer considered possessor of the land. *Matteuzzi*, 866 S.W.2d at 132. There are two situations, however, in which liability may remain with the lessee Daniel.

■ If a landowner or lessee exerts substantial control over the work done by the independent contractor, the general rule of nonliability may not apply. *Id.* Appellant submits that Lester exerted the necessary control over him and the work he was doing for the duty of care and thus, potential for liability, to remain with him. In order to meet this exception to the general rule the control "must be substantial ... the owner must be controlling the physical activities of the employees of the independent contractor or the details of the manner in which the work is done." *Halmick v. SBC Corporate Services, Inc.*, 832 S.W.2d 925, 929 (Mo.App. E.D.1992). In this case the independent contractor had no employees and he was the one injured. We find no reason to distinguish between the two situations where an employee of the independent contractor is injured and where, as in the instant case, the contractor is a sole practitioner and is injured himself. We will, therefore, apply the same rule of law. We do not find any facts which suggest that respondents' involvement rose to the level of control necessary for the duty of care to remain with them and not shift to appellant. Lester merely held the ladder and handed appellant a wrench. It is undisputed that Daniel was in the office and not involved in the repair at all. Appellant admits that he was the one making the decisions and that he had more expertise in repairing garage doors than Lester. The device which caused appellant's injury was in his control and respondents are, therefore, not liable.

■ Another exception to the general rule that a landowner is not liable for injuries to invitees caused by the negligence of an independent contractor falls under the inherently dangerous activity doctrine. If the activity performed by the independent contractor is inherently dangerous the landowner who commissioned the work can be liable. *Matteuzzi*, 866 S.W.2d at 131. Appellant asserts that the respondents can be liable under this doctrine. Because we find that the work to be done by appellant on the garage doors was not inherently dangerous, we do not need to address any other issue concerning the availability of the doctrine to the appellant. The question of whether an activity is inherently dangerous is a question of law for the courts. *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384, 386 (Mo. banc 1991). The test to determine whether an activity is "inherently dangerous" is as follows:

> To be inherently dangerous, the work being done must, by its very nature, involve some "peculiar risk" of physical harm. A peculiar risk is differentiated from a "common risk" in that common risks are those to which persons in general are subjected by ordinary forms of negligence which are typical in the community. [citation omitted] The theory of liability for an inherently dangerous activity is not applicable where the negligence of the independent contractor creates a new risk, not intrinsic to the work itself, which could have been prevented by routine precautions of a kind which any careful contractor would be expected to take. *Reed v. Ocello[,]* 859 S.W.2d 242, 245 (Mo.App.E.D. 1993), *citing Hofstetter v. Union Electric Co.*, 724 S.W.2d 527, 530 (Mo.App.1986).

Accordingly, if there is a safe way to perform the activity, it is not inherently dangerous and the general rule of landowner non-liability applies. Appellant admitted that he did not use the proper tools that he normally does for this type of job and that he could have made the job safer by doing so. Appellant made an incorrect determination that the bracket would not break free. He relied

on this determination and did not take precautions to prevent it from breaking free or to prevent injury in the event it did break free. As a result, we find that appellant's injury resulted from the method of repair and not from some special hazard or "peculiar risk" inherent in repairing garage doors. The inherently dangerous activity doctrine, therefore, does not apply to this case.

We must further analyze the merit of the trial court's grant of summary judgment in terms of Daniel's potential for liability given appellant's status as a business invitee. For the reasons we have stated above, Lester, as the lessor, cannot be held liable for injuries to invitees of Daniel, the lessee. The rules governing the duties of possessors of land to invitees are governed by Restatement of Law of Torts, Second (1965), §§ 343 and 343A(1) which were expressly adopted by the Supreme Court of Missouri in *Harris v. Niehaus*, 857 S.W.2d 222 (Mo. banc 1993). Section 343 provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

Appellant's claim against Daniel fails on the last two parts of this section. It is clear from the record that Daniel knew of the dangerous condition of the garage door. He hired appellant to repair that very condition, however, effectively warning him of the danger. Appellant admitted that he knew, prior to the accident, that if the securing bolt came loose, the bracket would swing around. He, therefore, was warned of and knew of, the danger. As a result, Daniel was entitled to expect that appellant, as a contractor with experience in garage door repair, would take precautions to protect himself from injury. Daniel exercised reasonable care by hiring an experienced contractor to repair the broken garage door. He is, therefore, not liable under § 343. Point one is denied.

Appellant's second point on appeal claims that respondents are liable under a negligent failure to warn theory. As we have stated above, however, respondents warned appellant of the dangerous condition by hiring him to repair it. Respondents did not have any superior knowledge of the danger. Appellant admitted to being more knowledgeable about garage doors than respondents and also admitted that he was aware of the potential for the bracket to spin. There were no facts presented or in dispute which suggest that respondents are liable under a negligent failure to warn theory. Point two is denied.

Appellant's third point fails for reasons similar to those which denied his second point. Appellant claims that he pled a viable case for negligent failure to provide securing devices and to provide a safe work place. It is clear from the record that appellant chose which tools and which method of repair to use. He did not ask respondents to provide securing devices. As we stated above, appellant had possession and control over the area in which he was working and the method in which he made his repairs. It was not an unsafe workplace which caused appellant's injury but his method of repair. We find no facts in the record to support this point. Point three is, therefore, denied.

Judgment affirmed.

CRANE, P.J., and GERALD M. SMITH, J., concur.