James HUNT, Plaintiff-Respondent,

v.

**JEFFERSON ARMS APARTMENT COMPANY, Defendant-Appellant.**

James HUNT, Plaintiff-Appellant,

v.

**LIEBERMAN CORPORATION, et al., Defendant-Respondents.**

Nos. 47379, 47380.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 28, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 16, 1984.

Application to Transfer Denied
Nov. 20, 1984.

Richard O. Funsch, Richard J. Mehan, Jr., St. Louis, for Jefferson Arms Apartment Co.

Ray E. White, Jr., Clayton, L. Steven Goldblatt, St. Louis, for James Hunt.

Kenneth W. Bean, St. Louis, for Reliance Elevator Service.

Ben Ely, Jr., Ellen M. Edwards, St. Louis, for Lieberman Corp.

SNYDER, Presiding Judge.

Plaintiff James Hunt brought an action against Jefferson Arms Apartment Company (JAAC), Harold G. Lieberman, Alan L. Lieberman, Lieberman Corporation, and Reliance Elevator Service Company for injuries sustained by plaintiff when he fell down an elevator shaft during the renovation of the Jefferson Hotel building in St. Louis. Plaintiff appeals from the trial court's grant of motions for directed verdicts made by Lieberman Corp. and Reliance. JAAC appeals from the judgment and jury verdict awarding plaintiff $1,300,-000 on his negligence action against it. This court consolidated the two appeals. The judgment is affirmed in part and reversed in part.

Plaintiff contends the trial court erred in: (1) granting Lieberman Corp.'s motion for directed verdict because there was evidence that Lieberman Corp. was engaged in a joint venture with JAAC and that Lieberman Corp. acted as JAAC's agent; and (2) granting Reliance's motion for directed verdict because there was evidence from which the jury could infer Reliance's negligence in failing to inform JAAC of a dangerous condition of its elevator.

JAAC alleges trial court error in denying JAAC's motion for directed verdict because: (1) plaintiff was an employee of H.B. Deal Contracting Company, an independent contractor, and the accident was caused by the negligence of plaintiff's co-employee for whose negligence JAAC was not responsible; (2) there was no substantial evidence to prove that the elevator was under JAAC's control at the time of the accident; and (3) there was no substantial evidence that JAAC knew or could have

known that the door of the elevator shaft was open when plaintiff fell. JAAC also argues that the trial court erred in failing to order a remittitur and in entering judgment against JAAC as a partnership.

In December of 1976, JAAC, a limited partnership, acquired ownership of the Jefferson Hotel building in downtown St. Louis. JAAC then leased the property to Jefferson Arms Corp., which in turn hired Westview Management Company to manage the property. To renovate and rehabilitate the building, formerly a hotel, JAAC signed a construction contract with Locust Construction Company.

Harold and Alan Lieberman were the general partners of JAAC and were officers in the Jefferson Arms Corp., Westview, and Locust Construction. Westview and Locust Construction were wholly owned subsidiary corporations of Lieberman Corporation, which was yet another corporation in which Harold and Alan were officers.

Most of the actual work on the Jefferson Arms was performed by entities not controlled by the Liebermans. The construction work needed in the rehabilitation and reconstruction of the building was assigned by Locust Construction to H.B. Deal through two contracts: a construction management contract under which H.B. Deal agreed to manage and coordinate the construction and a sub-contract under which H.B. Deal agreed to perform the actual work.

In addition, JAAC contracted with Reliance to provide elevator maintenance services for elevators 5, 6 and 7, elevator 5 being the one where Mr. Hunt's fall occurred.

Plaintiff Hunt was employed by H.B. Deal at the Jefferson Arms site as an operator of a motor buggy. His job consisted mainly of loading construction debris into the motor buggy and hauling it out of the building and into a dumpster. In order to remove the debris from the multi-story structure, plaintiff would use the elevators in the building which were operated by other employees of H.B. Deal.

On the morning of March 10, 1977, plaintiff took his motor buggy with a load of debris from an upper floor down to the first floor in an elevator and then outside to the dumpster. He then returned to the first floor lobby to await an elevator. Plaintiff parked his buggy and went to feel for the bell to call the elevator operator. As he was groping for the bell, plaintiff fell down the elevator shaft for elevator number five, sustaining serious injuries in the fifteen to eighteen foot fall. There was no evidence of exactly how plaintiff fell, how far open the elevator door was, whether the bypass key was being used or, whether indeed the plaintiff himself had opened the elevator door.

There was evidence that lighting on the first floor was inadequate and that plaintiff had trouble adjusting his eyes to the relative darkness because he had just re-entered the building after taking debris outside to the dumpster.

Plaintiff's theory is that the elevator operator moved the elevator cab away from the first floor, but had left the doors to the shaft open. Normally, the elevator would not run with the doors to the shaft open because the opening of the elevator doors would break the necessary electrical contact. If the elevator operator, however, inserted a key into a bypass switch, which was inside the elevator cab, turned and held the key, the elevator could move regardless of whether the doors to the elevator shaft were open.

Plaintiff's expert on elevators testified that the contact could also be bypassed by tying it down with a wire or string. There was no evidence that a wire or string had been used. Charles J. Follen, an officer of Reliance, said to the best of his knowledge he saw a key in the bypass switch after plaintiff's fall.

Addressing JAAC's points first, this court combines its first three points into

one question: Did the trial court err in denying JAAC's motion for a directed verdict? Put another way, did plaintiff adduce sufficient evidence to make a submissible case? This court holds he did not and that JAAC's motion for a directed verdict should have been granted.

Plaintiff argues that JAAC is liable either on the theory that JAAC was liable for the torts of its independent contractor or because JAAC directed or condoned the negligent operation of the elevator.

■ Appellate review of whether a trial court erred in overruling a defendant's motion for directed verdict consists of construing all evidence and inferences from the evidence in the plaintiff's favor to determine whether the plaintiff has made a submissible case. *Green v. Crunden Martin Mfg. Co.*, 575 S.W.2d 930, 932[1] (Mo.App. 1978).

Plaintiff's action against JAAC is based upon JAAC's alleged negligence in allowing the elevator to be operated with a key bypass switch. "Actionable negligence consists of three elements: a duty owed by the defendant to the plaintiff, a breach of that duty by the defendant, and an injury to the plaintiff which is caused by the breach of the duty." *Carver v. Schafer*, 647 S.W.2d 570, 572[2] (Mo.App.1983).

The alleged duty owed by JAAC to plaintiff is premised on JAAC's status as owner of the Jefferson Arms building and plaintiff's status as an invitee. Neither JAAC's position as a landowner nor plaintiff's identity as an invitee are questioned, although at the time of plaintiff's fall the premises were leased to the Jefferson Arms Corporation, not a party to this action.

■ The general rule is that the owner of the premises owes an invitee the obligation to use reasonable and ordinary care to prevent injury to the invitee. *Behnke v. City of Moberly*, 243 S.W.2d 549, 554[8, 9] (Mo.App.1951).

■ The liability of the landowner for injuries received on the premises, however, is dependent upon the device which caused the injury being in the possession and control of the landowner. *McKeighan v. Kline's, Inc.*, 339 Mo. 523, 98 S.W.2d 555, 559 (1936). Thus, the liability of the landowner should more accurately be phrased the liability of the occupant or possessor of the land.

That the device causing the injury must be in control of the landowner in order for liability to attach is recognized by plaintiff. Plaintiff's verdict director,[1] MAI 22.03 modified, includes a requirement that the jury find JAAC in control and possession of the elevator before a verdict could be rendered in plaintiff's favor.

The verdict director is based upon Restatement (Second) of Torts § 343 (1965),[2] see MAI 22.03, Committee's Comment,

---

**1.** INSTRUCTION NO. 6

Your verdict must be for plaintiff, James Hunt, if you believe:

First, the elevator was in the control and possession of defendant, and

Second, the door of elevator #5 was open on the ground floor while no elevator was there, and as a result the elevator was not reasonably safe for persons using said elevator, and

Third, plaintiff did not know, and by using ordinary care could not have known of this condition, and

Fourth, defendant knew or by using ordinary care could have known of this condition, and

Fifth, defendant failed to use ordinary care to remedy it, barricade it, or warn of it, and

Sixth, as a direct result of such failure, plaintiff was injured, unless you believe plaintiff is not

entitled to recover by reason of Instruction Number 7.

**2.** § 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

which speaks in terms of the liability of a possessor of land. The issue thus becomes whether there was evidence that JAAC was a possessor of land, or to paraphrase plaintiff's verdict director, that the elevators were within the possession and control of JAAC.

H.B. Deal was the independent contractor to whom the task of renovating the Jefferson Arms building had been assigned. There is no evidence that JAAC or Locust Construction retained the right to control the builder in the performance of the contracts which H.B. Deal signed with Locust Construction.

Neither of the Liebermans, who were officers of Locust Construction and general partners of JAAC, ever instructed H.B. Deal as to how H.B. Deal was to do its job. H.B. Deal did much of the work itself and was to coordinate the balance of the work done by other contractors which had signed contracts with H.B. Deal. H.B. Deal had physical control of the building. More important, it was an H.B. Deal employee who operated the elevator.

A possessor of land is defined by Restatement (Second) of Torts § 328 E (1965).[3] Possession within the context of a landowner's liability for injuries occurring on the premises, is used " . . . strictly in the factual sense." Restatement (Second) of Torts § 328 E, Committee's Comment (1965).

■ Where a landowner relinquishes control and possession of the premises to an independent contractor during a period of construction, the landowner is not the possessor of the land during the construction period. *Lunde v. Wennebago Industries, Inc.*, 299 N.W.2d 473, 479[8] (Iowa 1980).

■ The owner's involvement in overseeing the construction must be substantial in order to justify imposition of liability on the owner. 299 N.W.2d at 479[9, 10]. Here, JAAC and Locust Construction had relinquished control of the premises to H.B. Deal before the improper use of the bypass switch; therefore JAAC was not the possessor of the Jefferson Arms building.

Plaintiff, however, argues that the premises, particularly the elevators, were within JAAC's control. The contract between Locust Construction and H.B. Deal required Locust Construction to furnish approved building elevators, but JAAC contracted with Reliance for the latter to maintain the elevators.

The contracts cited by plaintiff to support his contention that JAAC did control the elevators do not show who was factually in possession and control of the elevators on March 10, 1977, but rather merely set forth legal relationships between the various contracting parties. Cf. Restatement (Second) of Torts § 328 E, Committee's Comment (1965). Moreover, the contracts are evidence at most of a minimal supervisory role insufficient to justify imposition of liability on JAAC. Cf. *Thrasher v. Gerken*, 309 N.W.2d 488, 489 (Iowa 1981); *Lunde v. Winnebago Industries, supra.* The key facts relieving JAAC of liability are that H.B. Deal had actual possession of the building and that an H.B. Deal employee was the elevator operator.

An additional reason militates against holding JAAC liable for plaintiff's injuries. Plaintiff fell, not because of a defective condition in the premises, but because of the negligent operation of the elevator by a fellow employee of H.B. Deal.

■ The landowner's duty to exercise ordinary care requires that the premises be kept in a reasonably safe condition for the invitee's use. *Howard v. Johnoff Restau-*

3. 328 E. Possessor of Land Defined
A possessor of land is
(a) a person who is in occupation of the land with intent to control it or
(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

*rant Company*, 312 S.W.2d 55, 57[2–4] (Mo.1958).

Plaintiff has never contended that the mechanical parts of the elevator were poorly maintained or that the elevator was not working properly. Nor has plaintiff based his theory of recovery on the premise that the mere existence of the bypass switch alone was negligence. Cf. *Sampson v. Laskin*, 66 Wis.2d 318, 224 N.W.2d 594 (1975).

Instead, plaintiff maintains that JAAC's negligence consists of allowing the elevator operator, an employee of H.B. Deal, to operate elevator number five with the key bypass switch. In fact, however, JAAC had no control over the H.B. Deal employees.

In *Malloy v. New York Real-Estate Ass'n.*, 156 N.Y. 205, 50 N.E. 853 (1898), the plaintiff, seeing that the chain which normally guarded the elevator shaft when the elevator was away from the ground floor had been unhooked from the staple, made a run for the elevator. Unfortunately, the elevator had been moved and plaintiff fell down the shaft.

The evidence pointed toward an employee of an occupant of the building as the one who carelessly moved the elevator leaving the chain unhooked. 50 N.E. at 854. The court held that the defendant's violation of a statute requiring a railing as a guard, instead of a chain, could not be the basis of liability because a railing could be moved just as easily as a chain. 50 N.E. at 855. The court's further ruling in *Malloy* that the defendant was not legally responsible for the conduct of the person who moved the elevator, *Id.*, supports a finding that JAAC was not liable in the present case.

A similar result was reached in *Claypool v. Wigmore*, 34 Ind.App. 35, 71 N.E. 509 (1904). There, the plaintiff, a lady, was walking in the company of a gentleman when the couple entered the first floor of defendant's building. The gentleman opened the door of the elevator for his companion, who proceeded to enter the elevator without looking where she was going. Unfortunately, the defendant's elevator was not on the ground floor and the plaintiff fell into the elevator shaft, sustaining injury. The court held that the defendant was not liable because the proximate cause of the accident was the gentleman's opening of the elevator door. 71 N.E. at 510.

*Claypool v. Wigmore* and *Malloy v. New York Real-Estate Ass'n.* stand for the proposition that where the plaintiff's fall down an elevator shaft was procured through the act of one not associated with the landowner, the landowner is not liable for the plaintiff's injuries. Although *Claypool v. Wigmore* and *Malloy v. New York Real-Estate Ass'n.* are rather old cases from other jurisdictions, both are consistent with and represent application of the rule that a landowner owes no duty to prevent injuries caused by persons who, although on the landowner's property, are not under the landowner's control. See *Rice v. White*, 239 S.W. 141, 144–145[9] (Mo.1922).

The elevator operator was an employee of H.B. Deal. There is no evidence that JAAC controlled H.B. Deal's employees or the manner in which the work was performed. Generally, where a landowner relinquishes possession of a building to an independent contractor and retains no power to direct the independent contractor's performance under the contract, the landowner is not responsible for the contractor's negligent acts. *Martin v. First National of Independence Co.*, 372 S.W.2d 919, 923[1] (Mo.1963). Thus, JAAC was not responsible for injuries caused by H.B. Deal employees. *Rice v. White, supra; Claypool v. Wigmore, supra; Malloy v. New York Real-Estate Ass'n., supra.*

Plaintiff cites *McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co.*, 323 S.W.2d 788 (Mo.1959); *Guthrie v. Reliance Const. Co.*, 612 S.W.2d 366 (Mo.App.

1980); *Stoeppelman v. Hays-Fendler Const. Co.*, 437 S.W.2d 143 (Mo.App.1968) and *Schneider v. Southwestern Bell Telephone Co.*, 354 S.W.2d 315 (Mo.App.1962), among others, in support of his contention that this court erred in not holding JAAC liable for his injuries.

*McDonnell Aircraft Corp.*, *Guthrie*, *Stoeppelman*, and *Schneider* reflect the principle, implicit in this court's opinion, that a landowner owes a nondelegable duty to protect his invitees from defective conditions on his property or to warn them of the conditions, provided that the conditions are factually within the control and possession of the landowner. In the case under review, however, plaintiff failed to prove that degree of control and possession of the elevators sufficient to impose upon JAAC, the duty to prevent the occasional, random, allegedly negligent operation of the elevator by employees of H.B. Deal.

*Fowler v. Park Corp.*, 673 S.W.2d 749 (Mo.banc 1984), also cited by plaintiff, is completely inapposite. *Fowler v. Park Corp.* involved a case of negligent entrustment.

Even assuming *arguendo* that JAAC did control the construction and was responsible for the conduct of the elevator operator, still plaintiff may not recover from JAAC. Gene Finch was an employee of Westview who was on the premises during the renovation period to learn how to maintain the building. He testified that on different occasions he noticed the operation of the elevators while the doors to the elevator shafts were open and told H.B. Deal's supervisor about it. Thus, H.B. Deal knew of the open elevator shafts.

 A landowner's duty to an employee of an independent contractor is satisfied by a warning to the independent contractor. *Hunt v. Laclede Gas Co.*, 406 S.W.2d 33, 38–39[4] (Mo.1966). Regardless of whether the warning came from JAAC or Westview, the duty, if any, owed by JAAC was satisfied when H.B. Deal's supervisor was told of the open elevator doors.

Because JAAC is not liable to plaintiff for the injuries suffered in the fall down the elevator shaft, this court need not address JAAC's other points.

 Turning to plaintiff's appeal, the first point relied on is that the trial court erred in granting Lieberman Corporation's motion for directed verdict. Plaintiff argues that JAAC, Jefferson Arms Corp., Westview, and Locust Construction were joint venturers in the Jefferson Arms project and that the corporate veils of the latter three should be pierced so that their parent corporation, Lieberman Corp., should be liable. This point is without merit.

First, none of the alleged joint venturers are liable for plaintiff's injuries. There is no evidence that anyone other than H.B. Deal was in control of the job site. Thus, neither the landowner, JAAC, nor Lieberman Corp. can be held responsible for the negligence of the employee of the independent contractor. *Martin v. First National of Independence Co.*, *supra*. Thus, even if the corporate veil were pierced, no cause of action would lie.

 Plaintiff also argues for the imposition of liability on Lieberman Corp. on the ground that Lieberman Corp. was an agent for JAAC. Larry Maynes, an employee of Lieberman Corp., signed the elevator maintenance contract with Reliance on behalf of JAAC. Larry Maynes was authorized to act on behalf of JAAC regarding the contract with Reliance.

Thus, Maynes was the servant of two masters, Lieberman Corp. and JAAC. This court does not believe the fact that a master's servant who also serves a second master renders the second master an agent of the first. Plaintiff cites no authority for this rather extraordinary proposition. Plaintiff's first point is denied.

 Plaintiff's second point is that the trial court erred in granting Reliance's mo-

tion for a directed verdict. Plaintiff contends that Reliance had a duty to warn "[JAAC], Lieberman Corporation or anyone else of the dangerous condition observed." This point is also denied.

In *Wolfmeyer v. Otis Elevator Co.*, 262 S.W.2d 18 (Mo.1953), an employee of a tenant of part of a building sued the elevator company for injuries sustained by the employee when he fell down an elevator shaft. The elevator company had agreed with the owners of the building to furnish elevator maintenance. The elevator had no interlocking device to prevent movement of the elevator when the doors to the shaft were open. The plaintiff employee claimed that the elevator company's failure to install such a device was negligence.

The court turned to the elevator company's contract with the owners in order to determine the scope of the duty undertaken by the elevator company. 262 S.W.2d at 21[2]. The court held that the elevator company was not liable to the employee because the elevator company had agreed only to maintain the elevator, not to install new equipment. 262 S.W.2d at 23.

Likewise, in the present case, the scope of Reliance's duty to third persons is determined by the contractual obligations which it undertook. Plaintiff relies on the following clause from the contract between JAAC and Reliance as the basis for liability: "The examinations ... include examinations of signal devices, enclosures, doors or interlocks." This clause, argues plaintiff, obligated Reliance to warn JAAC of the use of the bypass switch, which effectively rendered the interlocks inoperable.

This court does not agree with plaintiff's construction of the contract. An examination of the contract as a whole reveals that Reliance obligated itself to maintain the elevators in good working condition and to inspect them on a monthly basis. These duties Reliance performed. The elevator was in good mechanical condition. Nowhere in the contract does Reliance undertake to supervise the use of the elevator or to instruct others on the proper use of the elevator. The point has no merit.

The dismissal of the actions against Lieberman Corporation and Reliance is affirmed. The judgment against JAAC is reversed.

SMITH and SATZ, JJ., concur.

## ORDER

Respondent's motion for rehearing or transfer stricken as scurrilous. Opinion previously filed on June 19, 1984 withdrawn and new opinion filed.