Jerry L. WILSON, Appellant,

v.

RIVER MARKET VENTURE, I, L.P., Recon Development, Inc., Respondents.

No. WD 55866.

Missouri Court of Appeals, Western District.

May 18, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1999.

Application for Transfer Denied Aug. 24, 1999.

Fritz Edmunds, Jr., Overland Park, for appellant.

Bradley C. Nielsen, Larry James Tyrl, Kansas City, for respondents.

Before Presiding Judge ALBERT A. RIEDERER, Judge FOREST W. HANNA and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Plaintiff/Appellant Jerry Wilson ("Wilson") appeals from a jury verdict finding Defendants/Respondents, River Market Venture, I, L.P. ("River Market") and Recon Development, Inc. ("Recon") zero percent at fault on his claim for personal injuries arising out of his fall into a manhole at a construction job site on which Mr. Wilson was a painting subcontractor. He alleged that the manhole cover was improperly seated on the manhole and that it moved out of position or was out of position when he stepped on it, causing him to fall.

Plaintiff argues on appeal that the trial court erred in submitting an instruction which required the jury to find that Defendant Recon specifically controlled the manhole and its cover in order to find Recon liable for Plaintiff's injuries. We concur that the trial court erred in requiring the jury to specifically find that Recon controlled the manhole and cover; the jury should have been told to determine whether Recon controlled the portion of the premises on which the manhole and cover were located. It is also appellant's burden to show that prejudice resulted from this error, however, and this he failed to do because, based on the limited excerpts of the record filed in this Court, there is no basis on which the jury could have found that Recon controlled the premises but not the manhole, and visa versa. We therefore do not remand for a new trial on this issue.

We also reject Plaintiff's contention that the error as to Defendant Recon was compounded by the nature of the submission as to River Market and requires a new trial as to both defendants. There is nothing in the record to indicate that the error in the instruction submitted against Recon had any effect on the jury's consideration of River Market's liability, which was determined based on the instruction offered by Plaintiff himself.

Plaintiff also argues that the trial court erred in failing to submit his alternative theory that the construction manager for the project, Ryan Molen, was negligent, that he was the agent of either Defendant River Market, or Defendant Recon, and that one of them was thus liable for Plaintiff's injuries. Plaintiff admits he failed to plead an agency theory, but asserts that his pleadings were amended to conform to

the evidence of agency. We find that Plaintiff failed to offer any evidence relevant solely to the theory that Mr. Molen was the agent of River Market or Recon, and thus the trial court did not err in failing to find the pleadings amended to conform to the evidence of the alleged agency relationship between Mr. Molen and the Defendants.

Finally, we reject the argument that the trial court erred in failing to grant a continuance in order to give Plaintiff time to secure an expert witness. While it would have been within the court's discretion to grant the continuance, we do not find that the trial court abused its discretion in denying it on the facts presented to it. Judgment affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Recon Development is a construction management firm, and at the time of trial had been in business for five and one-half years. It was hired by River Market to be the general contractor on a construction project regarding a building located in the River Market area owned by River Market and leased to a company called Australian Optical.

The construction of the Australian Optical space occurred in two phases. Phase I was the more extensive project and involved converting a raw space that had not been occupied for some time into a functional area in which Australian Optical could operate. Plaintiff, Mr. Wilson, is a painting contractor doing business as J & K Painting. He performed painting work for Recon during Phase I, without injury.

Following the completion of Phase I, Australian Optical began utilizing the front part of the building, while Recon began Phase 2 in the back part of the building. Phase 2 involved tenant finish activities and upgrading the space for occupancy by Australian Optical. This work included such things as framing, sheet rocking, hanging light fixtures, painting and carpeting. Plaintiff Wilson and his employees were also hired by Recon to work on Phase 2 of the project. As a part of their work, they would carry doors back to the Phase 2 area of the building to paint them. Other subcontractors and delivery people doing business with Australian Optical, as well as Mr. Molen and persons working for Australian Optical, went in and out of the Phase 2 area during construction. The manhole into which Plaintiff ultimately fell was also located inside this back part of the building.

David Pecha is one of Recon's principals and was involved in the construction and renovation of the Australian Optical space. Recon did not supervise the site on a 24–hour basis, and the front portion of the building was leased and occupied by Australian Optical during the time the work was ongoing. Mr. Pecha testified that he was at the job site on the average of every two or three days during construction. He also testified that he had been in the space on many occasions before he began the specific work in question here, including during Phase 1 of the work for River Market. He estimated that, over the preceding year, he had been in and out of the space where the accident occurred some 200 times.

Day-to-day oversight was the responsibility of Ryan Molen of Construction Services, Inc., who had been hired as the job-site foreman. It was Mr. Molen's responsibility to open the job site in the morning and to lock it up at the end of the day, to schedule subcontractors, and to make sure the work was performed in accordance with the project plans. Mr. Molen has worked primarily for Recon over the last three years and has been involved in many jobs for it.

On the morning of the accident, Mr. Molen and Mr. Wilson were walking into the back, or Phase 2, area of the Australian Optical space together, with Mr. Molen entering the building ahead of Mr. Wilson through the side door. Mr. Molen and his brother had hung a lightweight transparent plastic from the ductwork and ceiling in order to keep paint spray from

migrating out of the Phase 2 construction area. Mr. Molen testified that, as he entered, he could see through the plastic to where painters were working at the rear of the space. Painters were the only people working at the job-site at the time of the accident. Mr. Molen was looking through one of the slits in the plastic when he heard Mr. Wilson fall. He stopped and turned, and saw Mr. Wilson on the floor with one leg down in the manhole. The manhole was located approximately four feet from the side door of the building through which they had just entered. Mr. Wilson was taken to the hospital for an examination. He apparently suffered severe damage to his right leg.

Mr. Molen testified that he had seen the manhole and cover before Mr. Wilson's accident, but had not given it a detailed inspection. The manhole and cover looked similar to ones Mr. Molen has seen and inspected in the front portion of the Australian Optical space during Phase 1 of the construction project. Mr. Molen stated he never saw anything regarding the manhole in question which caused him to think it was unsafe. Similarly, David Pecha testified he had seen the manhole and cover before the accident, but there was nothing about it which drew his attention. He had seen manholes like the one involved in the accident about 20 other times in buildings in the River Market area and never had any problems with them. He stated that any time he inspected the manhole it was properly covered, and at no time had he ever seen the manhole cover removed before the accident.

Mr. Wilson filed suit against River Market and Recon Development on April 23, 1997, alleging that the manhole was in a dangerous condition in that it was not covered properly. The court scheduled the discovery period for this case to close on March 13, 1998. On December 23, 1997, the attorney for Mr. Wilson issued a discovery request to enter upon the land owned by River Market for the purpose of inspecting and photographing the manhole and surrounding area. River Market objected on the ground that the space was now finished and covered by a carpet, and it did not want its tenant disturbed by rolling back the carpet to see the manhole. The court declined to directly order River Market's tenant to allow the discovery, and instead simply ordered the parties to reach an arrangement under which the premises could be inspected. Mr. Wilson claims River Market delayed arranging the inspection until one week before trial. Eventually, Mr. Wilson paid $100 to the tenant and additional sums to the carpet installer to pull up the carpet so he could inspect the manhole. Plaintiff claims that, prior to the inspection, he had no reason to believe an expert would be needed, because Recon had stated that the manhole's dangers were "open and obvious" in its answers to Plaintiff's interrogatories. Plaintiff claims that, upon inspection, he discovered that the manhole's dangers were not "open and obvious," that it was not the type of manhole commonly known to lay persons, and that an expert would be needed to explain how the manhole cover could become a dangerous condition. Plaintiff filed a motion for continuance to obtain an expert witness. Recon and River Market objected to the continuance and Plaintiff's motion was denied.

Ryan Molen was not named as a party to this lawsuit. Mr. Wilson claimed, however, that the evidence at trial showed an agency relationship between River Market and Mr. Molen or between Recon and Mr. Molen, and requested the court to submit instructions requiring the jury to determine whether Mr. Molen was an agent of Recon or River Market and whether his negligence caused Plaintiff's injury. Defendants objected to the submission of an agency theory because agency had not been pled in Plaintiff's petition. Plaintiff asserted the pleadings were deemed amended to conform to the evidence of agency. The trial court sustained Defendants' objections and refused to instruct the jury on an agency theory as to either Defendant.

Plaintiff also submitted jury instructions regarding the duties of owners and possessors of land. River Market initially objected to the verdict director regarding its duty as an owner and offered an alternative instruction, but ultimately withdrew its objection and the case was submitted on Plaintiff's verdict director against River Market. That verdict director did not submit control at all, either as to the manhole in particular or as to the Phase II area in general. River Market did, however, submit a converse instruction which required the jury to find for it if it found that River Market did not control either the physical activity of the people working on the site or the details of the work at the site. Plaintiff did not object to this converse instruction.

Defendant Recon also objected to Plaintiff's verdict director against it, and submitted an alternative instruction which required the jury to find that "the manhole and lid were in the possession or under the control of defendant Recon Development, Inc.," in order to hold Recon liable. The court gave this instruction over Plaintiff's objection. The jury returned a verdict assigning zero percent fault to each Defendant and zero percent fault to Plaintiff. Plaintiff filed a timely motion for a new trial, which was denied by the trial court, and this appeal followed.

## II. STANDARD OF REVIEW

▇▇▇ We will affirm the trial court's ruling concerning a not-in-MAI instruction if it follows the substantive law and can be readily understood by the jury. *Smith v. Kovac,* 927 S.W.2d 493, 497 (Mo.App.1996). We review the court's decision regarding discovery and requests for continuance under an abuse of discretion standard. *State ex rel. Lichtor v. Clark,* 845 S.W.2d 55 (Mo.App.1992); *State ex rel. State High-*

*way Comm'n v. Milnes,* 573 S.W.2d 727 (Mo.App.1978).

## III. THE COURT ERRED IN INSTRUCTING THE JURY ABOUT THE GENERAL CONTRACTOR'S DUTY TO CONTROL THE MANHOLE

Plaintiff's theory against Defendant Recon was that it took over control of the area of the premises in which the manhole was located from River Market for the duration of the renovation project, and hence was responsible for the allegedly dangerous condition of the manhole cover.

▇▇▇ As Plaintiff notes, a landowner has a prospective duty to business and other invitees to use reasonable ordinary care to remove, barricade or warn of dangerous conditions on the property. *Lawrence v. Bainbridge Apartments,* 919 S.W.2d 566 (Mo.App.1996); *Matteuzzi v. Columbus Partnership, L.P.,* 866 S.W.2d 128 (Mo. banc 1993). An employee of an independent contractor who has the landowner's permission to use his premises or facilities is an invitee and is entitled to the protections extended to invitees. *Lawrence,* 919 S.W.2d at 569. The duty of care shifts to the independent contractor, however, if the landowner relinquishes possession and control of the premises to the independent contractor during the period of construction, and the landowner is no longer considered the possessor of the land and is relieved of potential liability. *Id.See also Matteuzzi,* 866 S.W.2d at 132. The only exceptions to this rule are when the work involves an inherently dangerous activity, a situation not relevant here,[1] or when the landowner actually retains control of the job site and of the contractor's activities. For the latter to occur, the landowner must have substantial involve-

[1]. The "inherently dangerous activity" exception provides that a "landowner will be liable for injuries to innocent third parties or employees of independent contractors who are not covered by workers' compensation for failure to take precautions to prevent an injury caused by an inherently dangerous activity

performed on his land." *Lawrence v. Bainbridge Apartments,* 957 S.W.2d 400, 404 (Mo. App.1997). In order for a Plaintiff to recover he must be a member of the protected class and the activity must be inherently dangerous. *Id. See also Matteuzzi,* 866 S.W.2d at 130.

ment in overseeing the construction, and that control must go beyond simply securing compliance with the contracts or generally describing the nature of the work to be performed. The landowner must control the physical activities of the employees of the independent contractors or the details of the manner in which the work is done, *Callahan v. Alumax Foils, Inc.,* 973 S.W.2d 488, 490 (Mo.App.1998); *Lawrence,* 919 S.W.2d at 569, or the injury must occur on land that remains in the landowner's control and is not an area where the contractor is performing the work for which he was hired. *Mullins v. Tyson Foods, Inc.,* 143 F.3d 1153, 1159–60 (8th Cir.1998).

Plaintiff's offered and rejected verdict director against Recon stated as follows:

Your verdict must be for the Plaintiff if you believe:

First, there was a manhole cover which did not fit the manhole properly, and as a result, the manhole was not reasonably safe, and

Second, defendant knew, or by using ordinary care could have known, of this condition, and

Third, defendant failed to use ordinary care to make the manhole safe, barricade, or warn plaintiff of the condition, and

Fourth, as a direct result of such failure, plaintiff sustained damage.

The phrase "ordinary care" as used in this instruction means that degree of care that an ordinary careful person would use under the same or similar circumstances.

As Recon notes and Plaintiff candidly admits, the instruction was objectionable because it uses the term "Defendant" generally rather than identifying to which of the two Defendants it applied and therefore would have confused the jury. Moreover, as Recon points out, the instruction nowhere submitted the issue whether the landowner had surrendered possession and control of the property to Recon, although, as noted above, it is well-settled that such a surrendering of possession and control is

required in order to hold the contractor liable. The issue before us is not whether Plaintiff's refused instructions were correct, however, but whether the verdict directing instruction as to Defendant Recon was prejudicially erroneous.

Over Plaintiff's objection, and after refusing the verdict director offered by Plaintiff against Recon, the trial court agreed to give the following verdict director proffered by Recon:

In your verdict you must assess a percentage of fault to defendant Recon Development, Inc. whether or not plaintiff Jerry Wilson was partly at fault if you believe:

First, there was a manhole cover which did not fit the manhole properly, and as a result, the manhole was not reasonably safe, and

*Second, the manhole and lid were in the possession or under the control of defendant Recon Development, Inc.,* and

Third, defendant Recon Development, Inc. knew or by using ordinary care could have known of this condition, and

Fourth, defendant Recon Development, Inc. failed to use ordinary care to make the manhole safe, barricade it or warn of it, and

Fifth, such failure directly caused or directly contributed to cause damage to plaintiff.

(emphasis added).

Plaintiff argues that this instruction was prejudicially erroneous because it required Plaintiff to show that Defendant Recon had taken possession and control of the specific instrumentality which caused the injury – the manhole and cover – whereas under the applicable law a contractor is liable if it takes control of the premises, without the necessity of showing evidence that the contractor took control of the specific instrumentality causing harm. Plaintiff argues that under these instructions the jury could find that neither Defendant was in control of or responsible for the manhole and cover, because it could

believe that River Market had given up general control of the premises to Recon, but that Recon had not specifically agreed to assume control of the manhole and cover in particular.

Recon argues that, to the contrary, under Missouri law, Plaintiff must prove that Recon took control of the specific instrumentality itself – the manhole and cover— in order to hold it liable, and that its instruction properly so submitted. In support, it cites us to *Hunt v. Jefferson Arms Apartment Co.*, 679 S.W.2d 875, 880 (Mo. App.1984). In *Hunt*, plaintiff, an employee of an independent contractor, brought an action against the owner of the premises for an injury he sustained when he fell down an elevator shaft on a construction project. *Hunt* held that the landowner's liability for the injuries received in the fall in the elevator shaft depended on whether the elevator was in his possession and control. The court found that the premises owner was not liable based on the fact that the owner had relinquished control of the premises to the independent contractor. Recon also relies on *Horner v. Hammons*, 916 S.W.2d 810, 815 (Mo.App.1995), which held that the landowner's liability for an injury to a worker depended on whether it exercised substantial control of the details of the work.

Relying on these cases, Recon argues that "obviously, implicit within the concept of premises liability is control of the instrumentality causing the injury. In order for the jury to have found against respondent Recon, there had to be a factual finding that it was in possession or control of the instrumentality causing the injury." These cases are, however, simply specific applications of the above-noted rule that the landowner's duty of care will not be delegated to the general contractor if the landowner retains substantial control of the details of the work and the physical activities of the workers. *Callahan*, 973 S.W.2d at 490. They in fact found that, because the landowner did not retain such control, responsibility did pass to the general contractor.

Here, of course, the general contractor is Recon. *Hunt* and *Horner* thus support Plaintiff's argument that, in the absence of retention of specific control of the instrumentality of injury by the landowner and in the absence of substantial control of the work by the landowner, the landowner's duty of care is delegated to the general contractor, who stands in the shoes of the landowner for the purposes of liability.

*Mino v. Porter Roofing Co., Inc.*, 785 S.W.2d 558 (Mo.App.1990), does state that liability in that case depended on whether defendant controlled the specific instrumentality which caused the injury. There, however, defendant was a subcontractor. Unlike a general contractor such as Recon, a subcontractor does not stand in the shoes of the landowner for the purposes of determining liability for any injury on the premises during the course of construction. As *Mino* noted, whether a subcontractor should be held liable for an injury to the employee of another subcontractor depends on whether the subcontractor:

> [I]s in control of and has charge of the work and the dangerous condition is attributable to wrongful or negligent acts of his employees while the work is in progress. If the instrumentality causing the harm is under the control of the defendant contractor and the plaintiff is injured while in a work area common to employees, the defendant owes a duty of care to avoid causing such injury. A contractor who supplies equipment or devices which are to be used by employees of others on the construction job, owes a duty to make the device safe for its intended use.

*Id.* at 561 (citations omitted). Based on these principles, *Mino* held that the subcontractor owed no duty to the plaintiff because it had no responsibility to make the area of the roof openings safe, it did not create the hazardous condition and it had no control over or right to control the conduct of the plaintiff in the performance of his duties as an employee of another subcontractor. *Id.*

Recon argues that the fact *Mino* dealt with a subcontractor's liability does not limit its applicability here, but we disagree. Where, as here, Defendant is a general contractor, then liability depends on whether the landowner relinquished possession and control of the premises to the general contractor for the period of construction. If so, and if the landowner did not retain possession and control of the work or the instrumentality which caused the injury, then the general contractor stands in the shoes of the landowner for the purposes of liability. *See e.g. Lawrence*, 919 S.W.2d at 569.

For this reason, we find that the trial court erred in submitting the verdict directing instruction offered by Recon. The instruction should instead have required the jury to find that River Market gave up possession and control of the Phase II area of the premises to Recon. Of course, Recon would be free to counter that it did not take over possession and control of this portion of the premises because it remained open to others since Australian Optical was operating in the building at the time of the injury, but resolution of that issue would have been for the jury.

Recon argues that, even if the instruction did err in focusing the jury on control of the manhole and cover specifically, rather than on control of the area of the premises where they were located, the error was not prejudicial. We agree, although for a somewhat different reason than that argued by Recon.[2]

We find that, on these particular facts, the jury could not have been confused or misled by the error in the submission as to Recon. More specifically, we note that only a portion of the transcript was filed in this Court.[3] This portion of the transcript does not include the testimony of Mr. Wilson or of two of his employees present on the day of the injury, nor does it include the closing arguments or opening statements of counsel in which they set out their theories of the case.

From the limited transcript we do have, the theory on which Plaintiff argued his case is not entirely clear. It is evident, however, that, at least in this limited portion of the trial, no distinction was made by the parties or the witnesses between who controlled the Phase II premises generally and who controlled the manhole and cover in particular. Indeed, the only issue below relating to control seems to have been whether Recon, River Market, and/or Mr. Molen were in control of the workers and work area; there was no dispute that the manhole and cover were located within that area, nor was there a claim that one defendant controlled the manhole while another controlled the rest of that area of the premises.

---

2. Recon argued that any error in the verdict director was harmless because Plaintiff failed to make a submissible case that the manhole was not safe or that Recon knew of its dangerous condition. Recon is correct that it is permitted to raise the issue whether Plaintiff made a submissible case without filing a cross-appeal. *See, e.g., Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 412 (Mo.App.1996). We also agree with Recon that there is insufficient evidence in the limited record filed in this Court from which the jury could find that Recon had notice of a dangerous condition of the manhole or that the manhole was in a dangerous condition which made it not reasonably safe. Because Plaintiff claims that other record evidence supports its negligence claim, however, and because Plaintiff was not required to file a complete transcript in order to resolve the issues Plaintiff raised on appeal,

*see* Rule 81.12; *Beeks v. Hierholzer*, 831 S.W.2d 261 (Mo.App.1992), we cannot finally resolve the submissibility issue on this record. *Sullivan v. Spears*, 871 S.W.2d 75, 76–77 (Mo. App.1994). In any event, it is mooted by the fact, discussed *infra*, that we find the error in the submission as to Recon was not prejudicial.

3. There is no reason to think that the remainder of the transcript would have shown such prejudice, for there is nothing to indicate that there are other portions of the transcript relevant to this issue which were not included in the record filed in this Court. Nonetheless, we note that it is up to the appellant to file those portions of the transcript necessary for determination of the issues on appeal, including the issue whether prejudice resulted from instructional error. *See generally*, Rule 81.12.

Based on this record, there is no basis on which the jury could have found that Recon controlled the relevant area of the premises without also finding that it controlled the manhole and cover, and visa versa. For this reason, we find that the error in the instruction was not prejudicial and does not require reversal and remand for a new trial. *Accord, Lewis v. Columbia Mut. Ins. Co.,* 588 S.W.2d 161, 162 (Mo.App. en banc 1979) (court would not remand for new trial, even if instruction were erroneous, because failure to file adequate record on appeal precluded court from determining, except based on speculation, whether error materially affected the merits of the action).

 Finally, we disagree with Plaintiff that error resulted when the verdict director against Recon was read in the context of the verdict director against River Market, and that the difference in the language of the two verdict directors may have confused the jury as to both defendants. While the verdict director against River Market did not submit the control issue, this was because Plaintiff improperly failed to include this element in the verdict director he submitted. Plaintiff cannot complain of confusion caused by an instruction which he offered. *Lush v. Woods,* 978 S.W.2d 521, 524 (Mo.App. 1998); *Anglim v. Missouri Pacific R. Co.,* 832 S.W.2d 298, 308 (Mo. banc 1992). Moreover, River Market's converse instruction clearly set out the factual issues relevant to a determination whether River Market retained control of the activities and the work at the job site.[4]

For these reasons, we find that there is no basis, other than speculation, to conclude that the error in submission as to Recon affected the verdict as to River Market, or that the submissions as to the two defendants, considered together, confused the jury, and requires a retrial as to River Market and Recon.

## IV. THE TRIAL COURT'S DECISION NOT TO ALLOW AN INSTRUCTION ON AGENCY DOES NOT REQUIRE A NEW TRIAL

Plaintiff also attempted to separately submit the negligence of Mr. Molen, and to argue that either Defendant River Market or Defendant Recon was Mr. Molen's principal and hence was liable for his negligence. The trial court agreed with Defendants that it would be improper to submit on this agency theory where, as here, Mr. Molen had not been sued and Plaintiff's pleadings did not assert an agency theory against the Defendants based on Mr. Molen's conduct.

Plaintiff concedes that Ryan Molen was not sued directly and that agency was not pled, but argues an agency instruction should have been given as to each Defendant because the issue of Ryan Molen's agency was raised at trial and was not objected to by either Defendant, and therefore, the issue was tried by consent and the pleadings were accordingly amended to conform to the evidence pursuant to Rule 55.33(b). That rule provides in relevant part:

---

4. We do not intend by this opinion to approve use of such a converse instruction. In this regard, we note that River Market's converse instruction could only have been proper if plaintiff's verdict director against River Market had submitted the issue of control of the premises or the work, as it should have done under the above cases. Unfortunately, the element of control was omitted from the verdict director against River Market. River Market apparently tried to make up for plaintiff's refusal to submit this element by including it, without objection from Plaintiff, in a converse instruction. The purpose of a converse instruction is to converse one or more elements in the verdict director, however. *See, e.g., Thompson Missouri Auto Sales, Inc. v. Southwestern Bell,* 624 S.W.2d 56, 58 (Mo. App.1981). It should not be used to submit issues improperly omitted from the verdict director. Nonetheless, since plaintiff failed to object to the converse instruction below or on appeal, and since the converse instruction did properly explain an element which should have been included in the verdict director itself, we do not believe any prejudice resulted from this error on these facts.

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would cause prejudice ...

Rule 55.33(b).

■ Here, it is conceded that there was no express consent of the parties to the amendment of Plaintiff's pleadings to allow submission of Plaintiff's claim based on agency. Thus, the only way Plaintiff's pleadings could have been amended is by implied consent. In general, the implied consent rule applies only where the evidence presented bears *solely* upon the unpleaded issue and not upon issues already in the case. *Bond v. California Compensation & Fire Co.*, 963 S.W.2d 692, 699 (Mo.App.1998). A failure to object to evidence on the ground that it is beyond the scope of the pleadings results in automatic amendment of the pleadings to conform to the evidence. *Tharp v. Keeter/Schaefer Investments L.P.*, 943 S.W.2d 811, 816 (Mo.App.1997).[5]

■ Plaintiff claims that there was an implied amendment of the pleadings here because he introduced evidence which was not relevant to any of the pleaded theories, but which, rather, was relevant only to the issue whether Mr. Molen was the agent of either River Market or Recon. We disagree that Plaintiff introduced evidence solely relevant to the issue whether Mr. Molen was the agent of River Market. The only evidence to which Plaintiff points in his brief is evidence that Mr. Molen was paid by River Market and met with a River Market representative to find out when he was to have the carpet installed and to learn the general nature of his job functions. Our review of the record confirms that River Market paid Mr. Molen, as it did all those involved in the project on the land it owned. The other transcript references cited by Plaintiff do not support his argument, as they show only that River Market as the landlord worked with the tenant to determine how the latter wanted the space finished, and that Recon met with the landlord and the tenant to discuss how they wanted the space finished. This evidence does nothing to show that Mr. Molen was an agent of River Market. Moreover, even were it minimally relevant to that issue, it was also relevant to the issue whether River Market retained control of the project or gave up that control to Recon. As such, it was not solely relevant to the issue of agency, and cannot support the argument that the issue whether Mr. Molen was River Market's agent was tried by implied consent.

■ Plaintiff also argues that the issue whether Mr. Molen was Recon's agent was tried by implied consent. In support, Plaintiff points to evidence that Mr. Molen was not supervised by Recon on the job site and Recon did not direct his activities on a daily basis, but that Mr. Molen was hired by Recon and directed by it as to the general scope of his work, and he generally reported to one of its owners, David Pecha, about the project. There was also testimony Mr. Pecha told Mr. Molen to put

---

**5.** Contrary to Defendant Recon's arguments on appeal, Rule 55.33 itself states that an amendment of the pleadings to conform to the evidence may be raised at any time, even on appeal, and a party is not precluded from raising this claim simply because it did not seek leave to amend prior to submission. *See also, Kackley v. Burtrum,* 947 S.W.2d 461, 465 (Mo.App.1997) (issues raised by implied consent are treated as if raised by the pleadings even though the pleadings are not formally amended to conform to the evidence.)

up plastic between the finished Phase 1 area and the Phase 2 area to protect the former from dust and paint, although he did not tell Mr. Molen how to do it.

This is the total of the evidence which Plaintiff says shows that Mr. Molen was Recon's agent. We agree that this evidence is relevant to the agency issue. It is also relevant to the control issue discussed above, however, and was generally developed at trial in the context of attempting to show that Recon controlled the project by controlling how Mr. Molen and the subcontractors did their work. As a result, the questioning on these points could not have alerted Recon that Plaintiff was trying to establish the agency of Mr. Molen. It cannot be said that Recon's failure to object to these questions constituted implied consent to trial of the agency issue, for the questions were relevant to issues already in the case. For this reason, the trial court did not err in refusing to submit the agency issue.[6]

## V. THE TRIAL COURT DID NOT ERR IN DENYING A CONTINUANCE

■ In his final point on appeal, Plaintiff argues the trial court erred in not granting him a continuance the week before trial to allow his counsel time to obtain an expert witness to testify as to the manner in which the manhole cover moved off center and flipped when Plaintiff stepped on it.

Mr. Wilson filed suit against River Market and Recon Development on April 23, 1997, alleging that the manhole was in a dangerous condition in that it was not covered properly. The court scheduled the discovery period for this case to close on March 13, 1998. On December 23, 1997, the attorney for Mr. Wilson issued a discovery request to enter upon the land owned by River Market for the purpose of inspecting and photographing the manhole and surrounding area. River Market ob-

jected on the ground that the space was now finished and covered by a carpet, and it did not want its tenant disturbed by rolling back the carpet to see the manhole. The court declined to directly order River Market's tenant to allow the discovery, and instead simply ordered the parties to reach an arrangement whereby the premises could be inspected. Mr. Wilson claims River Market delayed arranging the inspection until one week before trial. Eventually, Mr. Wilson paid $100 to the tenant and additional sums to the carpet installer to pull up the carpet so he could inspect the manhole. Plaintiff claims that, prior to the inspection, he had no reason to believe an expert would be needed, because Recon had stated that the manhole's dangers were "open and obvious" in its answers to Plaintiff's interrogatories. Counsel for Plaintiff claims that, upon inspection, he discovered that the manhole's dangers were not "open and obvious," that it was not the type of manhole commonly known to lay persons, and that an expert would be needed to explain how the manhole cover could become a dangerous condition. Plaintiff filed a motion for continuance to obtain an expert witness. Recon and River Market objected to the continuance and Plaintiff's motion for continuance was denied.

■ The granting or denial of a continuance is discretionary with a trial court and we will interfere with the trial court's exercise of this discretion only when it has been manifestly abused. That discretion is abused only when the court's ruling is so "arbitrary and unreasonable as to show a lack of careful consideration and shock the sense of justice." *State ex rel. State Highway Comm'n of Missouri v. Milnes*, 573 S.W.2d 727, 728 (Mo.App. 1978). Based on the facts as stated above, we find that the trial court was within its discretion in denying the motion for a con-

6. Because of our resolution of this issue, we do not further address the arguments raised by Defendants that the agency instructions submitted by Plaintiff were roving commissions in that they submitted the general liability of Defendants for any negligence by Mr. Molen, without specifying which acts of Mr. Molen were alleged to be negligent.

tinuance. In so ruling, we note that Plaintiff did not claim below that there was any misrepresentation by River Market which caused him to believe he did not need an expert and thus, he cannot accuse the trial court of error in failing to be swayed by an argument he did not make below. Moreover, we have reviewed the interrogatory answers and we do not find them misleading. River Market stated that the manhole was open and obvious, and it was. It did not claim that it was in a defective condition which was open and obvious, as Plaintiff now seems to suggest. Moreover, Plaintiff has failed to explain what about the manhole caused him to need an expert and why he could not have anticipated this need earlier, particularly since the evidence showed this manhole was identical to up to 20 others in the general area.

For the reasons stated above, the judgment in favor of River Market and Recon is affirmed.

Presiding Judge ALBERT A. RIEDERER and Judge FOREST W. HANNA concur.